UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS CLIFFORD INGRAM,<br><br>       Plaintiff,<br><br>v.<br><br>K. STERLING, et al.,<br><br>       Defendants. | Case No.: 14cv2691-GPC (DHB)<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 10]** |

  Plaintiff Curtis Clifford Ingram is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)[1]  Plaintiff commenced this action on November 12, 2014, in which he asserts a variety of claims against Defendants K. Sterling, K. Balakian, K.A. Seibel, and Warden Paramo.[2]  Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 10.)

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing ("ECF") system.

[2] Plaintiff sues Defendant Sterling in her individual capacity only, but he sues the remaining Defendants in their individual and official capacities.  (ECF No. 3 at 2.)

After a thorough review of the pleadings, the parties' papers and all supporting documents, this Court hereby **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** with leave to amend.

## I. BACKGROUND

### A.   Procedural History

Plaintiff commenced this action on November 12, 2014, by filing a Complaint and motion for leave to proceed *in forma pauperis*.  (ECF Nos. 1, 2.)  On December 31, 2014, Plaintiff filed a First Amended Complaint.  (ECF No. 3.)  On February 9, 2015, the Honorable Gonzalo P. Curiel granted Plaintiff's motion for leave to proceed *in forma pauperis* and, following an initial screening of the First Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), directed U.S. Marshal service of the First Amended Complaint on Plaintiff's behalf.  (ECF No. 4.)

Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint on May 4, 2015, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 10.)  Defendants contend the First Amended Complaint should be dismissed because: (1) Plaintiff fails to state a claim in any of his three counts; and (2) the face of the First Amended Complaint demonstrates that Plaintiff failed to exhaust administrative remedies as to Count 3.  (*Id.* at 2:1-4.)  Plaintiff filed an opposition to Defendants' Motion to Dismiss on June 5, 2014. (ECF No. 13.)  Defendants filed a reply on June 9, 2015.  (ECF No. 14.)

### B.   Plaintiff's First Amended Complaint

The allegations in Plaintiff's First Amended Complaint stem from incidents occurring in April 2014 and October 2014.  Plaintiff alleges three separate counts:

**Count 1**

Count 1 (*see* ECF No. 3 at 3) of the First Amended Complaint asserts claims for denial of access to the courts, retaliation, supervisor liability, deliberate indifference, denial of due process, and cruel and unusual punishment.

Plaintiff alleges that on April 2, 2014, Defendant Sterling, a library technical assistant, denied his attempt to obtain Priority Legal User ("PLU") status even though

Plaintiff had a court order from the Central District of California demonstrating extraordinary circumstances warranting such status.[3]   Defendant Sterling allegedly told Plaintiff that "PLU status is basically for lockdowns and modified program," which, Plaintiff alleges, is contrary to California Code of Regulations §§ 3122(b)(1) and 3122(b)(6).[4]   Plaintiff also alleges that on this day Defendant Sterling retaliated against him by instructing a trainee, L. Acosta, "to generate a counseling chrono of manufactured

---

[3]     Plaintiff attached to the First Amended Complaint a November 21, 2013 order from the Central District of California which advised "the Warden and other custodial officials" that Plaintiff had two pending civil rights actions and one habeas corpus petition.  (ECF No. 3 at 26.)  The order further stated: "Plaintiff needs access to, among other things, all legal documents, copying services, writing materials, the prison law library, as permitted by prison rules, to properly and adequately represent himself in the pending proceedings."  (*Id.*)

[4]     California Code of Regulations § 3122(b) provides, in part:

> Inmates who have established court deadlines may apply for Priority Legal User (PLU) status to the prison law libraries.  Inmates who are granted PLU status based on their application shall receive higher priority to prison law library resources than other inmates.  All inmates who are not on PLU status are on General Legal User (GLU) status.

>> (1) An established court deadline may be either a court imposed deadline for an active case or a statutory deadline.  Inmates who apply for PLU status based on a court imposed deadline must show documentation from the court to verify that deadline.  Inmates who apply for PLU status based on a statutory deadline must identify the legal rule that compels the deadline.

>> . . .

>> (6) An inmate may receive PLU status within 30 calendar days of his or her established court deadline unless the inmate can demonstrate need for a longer period of PLU status based on extraordinary circumstances beyond the inmate's control.

CAL. CODE REGS. § 3122(b)(1), (6).

incident narrative."

Plaintiff alleges that on April 5, 2014, he "was again made the target of manufactured incident narratives" when Defendant Sterling issued a Rule Violation Report ("RVR") for (1) disobeying a direct order, (2) being out of bounds, and (3) being previously counseled on April 2 and April 3. Plaintiff alleges there was no evidence to support Defendant Sterling's claim that Plaintiff had been counseled on these two prior occasions.

Plaintiff alleges that prior to the events of April 2 and April 5, he generated a CDCR Form 22 Request for Interview, Item, or Service Form directed at Defendant Sterling. Plaintiff alleges that on April 2, 2014, Defendant Sterling read the contents of the Form 22 Request but refused to receive it. Plaintiff then forwarded the Request to Defendant Balakian who, Plaintiff presumes, instructed Defendant Sterling to respond. Rather than respond, however, Plaintiff alleges Defendant Sterling failed and/or refused to acknowledge Plaintiff's account of her statement and instead stated that Plaintiff had erroneously delivered the Request to inmate clerks, in violation of California Code of Regulations § 3086, even though these inmate clerks routinely handle and process inmates' sensitive court documents and transcripts.[5]

 Plaintiff alleges that on April 5, 2014, prior to Defendant Sterling's issuance of the false RVR discussed above, he generated a second Form 22 Request directed through Sergeant Kang, who signed off on the Request and delivered it directly to Defendant Sterling. Plaintiff alleges Defendant Sterling abused her discretion by denying Plaintiff's application for PLU status despite the fact he provided a court order from the Central District of California demonstrating exceptional and extraordinary circumstances. Plaintiff alleges Defendant Sterling was unprofessional and belligerent, and that she had Plaintiff

---

[5]    California Code of Regulations § 3086 provides, in pertinent part: "When seeking response to a written request for an interview, item, or service, the inmate . . . shall complete the Request for Interview, Item or Service form to describe his or her request. The inmate shall deliver or mail via institutional mail the completed form to any staff member who is able to respond to the issue." CAL. CODE REGS. § 3086(e).

escorted out of the law library under "manufactured narratives."  Specifically, Plaintiff alleges Defendant Sterling "recycled my claims of her conduct – "belligerent", etc. on the RVR, where K. Sterling mistated [sic] my pleading my position for application for PLU status as being argumentative."

On April 17, 2014, Plaintiff was found not guilty of the rules violations and the charges were dismissed.[6]

**Count 2**

Count 2 (*see* ECF No. 3 at 4) of the First Amended Complaint asserts claims for denial of access to the courts, retaliation, supervisor liability, and deliberate indifference.

Plaintiff alleges that following adjudication of the prior RVR in Plaintiff's favor (*see* Count 1), he was instructed by custodial officials to request permission prior to entering the law library on "off-tier" rotation.  On April 26, 2014, Plaintiff requested permission so that he could make copies and obtain envelopes to effect service in connection with his Central District litigation and to make copies of the prior RVR and disposition so he could attach them to a CDCR 602 Appeal/Grievance Form.  However, although inmate clerks typically handle copying functions, Defendant Sterling took it upon herself to make copies of the RVR disposition and findings (but not his court documents) and, according to Plaintiff, she exceeded the permissible scope of her duties by making additional copies for herself.  Defendant Sterling attempted to conceal this violation by denying any improper conduct and concealing the improper copies.

Plaintiff further alleges that on April 26, 2014, Defendant Sterling retaliated against Plaintiff's exercise of his constitutional right to access the courts through use of the prison law library by issuing another RVR that contained a "false, misleading, and manufactured incident narrative, specifically with the intent to make [Plaintiff] a program failure, have

---

[6]   The April 17, 2014, dismissal chrono, which Plaintiff attached to his First Amended Complaint, indicates that Plaintiff was found not guilty, the charges were dismissed, and the RVR was removed from his central file.  (*See* ECF No. 3 at 38.)

[him] fired from [his] job assignment, and placed on C-Status- limited activity/no work/limited law library access, that would cost [him] hundreds of dollars in sending [his] entertainment appliances home, having to purchase new appliances upon completion, and costing [him] an inmate pay number that was [his] only source of income." Plaintiff further alleges Defendant Sterling's April 26, 2014 RVR made "allegations of non-compliance on several dates that can not [sic] be substantiated."

Plaintiff also alleges that on April 26, 2014, Defendant Sterling generated a counseling chrono stating that Plaintiff falsified CDCR documents when he signed the copy log book stating that Defendant Sterling had made copies of his documents for herself.

On May 10, 2014, Plaintiff was found not guilty of the rules violations and the charges were dismissed.

Plaintiff alleges that he submitted a CDCR 602 on these issues on both April 28, 2014, and May 13, 2014.

**Count 3**

Count 3 (*see* ECF No. 3 at 3-4) of the First Amended Complaint asserts claims for denial of access to the courts, retaliation, supervisor liability, and deliberate indifference.

Plaintiff alleges that on October 17, 2014, Defendant Sterling falsely accused Plaintiff of making threats during the afternoon law library session, between 1:00 p.m. and 2:00 p.m., but that Plaintiff did not become aware of this allegation until 6:30 p.m. when his housing unit officer informed Plaintiff that he had been instructed to escort Plaintiff to a mental health holding cell. Upon arrival at the holding cell Plaintiff was informed by Sergeant Moore of Defendant Sterling's allegations, and Plaintiff was informed he would be transferred to Administrative Segregation pending investigation.

Plaintiff alleges that he had visited the law library on October 17, 2014 to make copies of his "settlement negotiation" to file in one of his unrelated Central District cases. He also attempted to submit an administrative request for a certified copy of his prison trust account to include with his *in forma pauperis* motion in the instant action. Believing, based on prior experiences, that Defendant Sterling reads Plaintiff's court documents, Plaintiff

"hoped to bypass any hostility and thought it diplomatic" to identify the defendants in the caption as "Unknown Agents."  Plaintiff alleges Defendant Sterling "refused receipt based on 'incomplete title of action,'" to which Plaintiff responded that Defendant Sterling "could not tell [Plaintiff] how to litigate [his] claims."  Defendant Sterling responded "that she was tired of going through this stuff with [Plaintiff]," to which Plaintiff responded "well you haven't seen nothing yet."  Plaintiff alleges that "[n]o threat was made or implied" that afternoon, and that if he had done so Defendant Sterling was obligated to activate her personal alarm, which she did not do.  Plaintiff alleges that because Defendant Sterling was aware of the impending litigation against her, she "decided to misconstrue what [Plaintiff] had said earlier, in conjunction with what she had stated to [Plaintiff], and, once again, manufacture an incident narrative on an RVR, resulting in retaliation based on [Plaintiff's] exercising [his] right to petition this Court for redress of these issues."

Plaintiff alleges that one week after the October 17, 2014 incident, he appeared before the "Institutional Classification Commity" [sic], whereupon he was released from Administrative Segregation, "pending adverse transfer, but placed on a different facility until that time."  Plaintiff alleges Defendant Seibel was in attendance at the ICC hearing. Plaintiff alleges he informed the committee "that previous attempts to address this concern were erroneously labelled as 'disciplinary' instead of staff misconduct, and denied.  I put the committee on notice of this action. . . . ICC also took my A1A work group status, without adjudication of the RVR."

Plaintiff alleges that on October 25, 2014, he submitted an emergency appeal based on the committee's action which, according to Plaintiff, "was based on the unadjudicated and false allegations made by K. Sterling.  Prior to this allegation, I have been disciplinary free for five years, where K. Sterling has generated all RVR's to date."

/ / /

/ / /

/ / /

/ / /

## II. DISCUSSION

**A.   <u>Legal Standards</u>**

### 1.      Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  However, courts may consider exhibits that are attached to the complaint.  *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss. (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978))).  However, exhibits that contradict the allegations of a complaint may fatally undermine the complaint's allegations.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims." (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."))).

A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "To survive motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Citation omitted.]  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

"All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed. v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988 (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation.").  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 570 (when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

/ / /

2.      **Standards Applicable to *Pro Se* Litigants in Civil Rights Actions**

"In a civil rights case where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt." *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).

Nevertheless, a court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)). Thus, before a *pro se* civil rights complaint may be dismissed, the Court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi*, 839 F.2d at 623–24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

**B.    Analysis**

Defendants contend that Plaintiff's First Amended Complaint fails to state a claim and, with respect to Count 3, that Plaintiff failed to exhaust administrative remedies.

1.      **Effect of Court's Screening Order**

As an initial matter, the Court considers Plaintiff's argument in his opposition that the Court's February 9, 2015 sua sponte screening order pursuant 28 U.S.C. §§ 1915(e)(2) and 1915A(b) (*see* ECF No. 4) amounts to a prior determination that the First Amended Complaint states a valid claim for relief and that he properly exhausted all his claims. (*See*

ECF No. 13 at 7:15-18, 10:19-23.)  However, the Court's "sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that [a] defendant may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007); *see also id.* at 1120 ("At the time of the initial screening, the complaint was liberally construed without the benefit of briefing from Defendants.").[7] Thus, the Court's prior screening order does not preclude Defendants from arguing, or the Court from finding, that Plaintiff fails to state a claim or that he failed to exhaust administrative remedies.

### 2.     Failure to State a Claim

#### a.     Access to Court

##### i.     *Applicable Law*

Prisoners "have a constitutional right to petition the government for redress of their grievances, which includes a reasonable right of access to the courts." *O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996); *accord Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) ("A prisoner's right to meaningful access to the courts, along with his broader right to petition the government for a redress of his grievances under the First Amendment, precludes prison authorities from penalizing a prisoner for exercising those rights."). However, the right of access is only guaranteed for certain types of claims: direct and collateral attacks upon a conviction or sentence, and civil rights actions challenging the conditions of confinement. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996).

To establish a violation of the right of access to the courts, a prisoner must allege facts sufficient to show that: (1) a non-frivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded; and (2) he has suffered an actual injury as a result. *Id.* at 353. "An 'actual injury' consists of some specific 'instance in which an inmate was actually denied access to the courts.'" *Sands v. Lewis*, 886 F.2d 1166,

---

[7]     The Court so advised Plaintiff in its February 9, 2015 screening order.  (*See* ECF No. 4 at 4:27-28.)

1171 (9th Cir. 1989) (quoting *Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir. 1982)).

In *Christopher v. Harbury*, 536 U.S. 403 (2002), the Supreme Court held that in order to state a claim for a deprivation of a constitutional right to access to the courts a plaintiff must allege:  (1) an underlying cause of action which should be adequately described in the complaint, and (2) the actions by officials that caused the denial of access to the courts.  *Id.* at 415 ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.").

### ii. *Analysis*

Defendants contend that Plaintiff fails to state a claim for denial of access to the courts because (1) he "does not allege that his Central District claim involved a direct criminal appeal, a habeas petition, or a civil right[s] action" (ECF No. 10-1 at 14:16-17), and (2) he fails to allege facts demonstrating "whether [he] was unable to meet deadlines in that case, and, even if so, whether the anticipated filing were [sic] significant."  (*Id.* at 14:22-24.)

Plaintiff argues in his opposition that his First Amended Complaint adequately states a claim for denial of access to the courts.  In support of this argument, Plaintiff emphasizes that Defendant Sterling abused her discretion by denying him reasonable access to the prison law library despite the fact that Plaintiff had presented a Central District order establishing extraordinary circumstances warranting PLU status.  (ECF No. 13 at 13:19-28.)  Plaintiff also contends that access to court issues have been ongoing for years with Defendant Sterling and that her conduct resulted in "not only Plaintiff's litigation efforts [being] frustrated, but that of numerous inmates seeking remedy of non-frivolous claims, as well."  (*Id.* at 14:16-18, 15:14-16.)  Plaintiff further argues in his opposition that Defendant Sterling's denial of access to the courts "fustrated [sic] Plaintiff's (3X) non-frivolous claims, as stated by Central District Court Order, where Plaintiff's response(s) were either 'delayed', copying services delayed, research to adequately respond to proceedings delayed, postage materials needed to affectuate [sic] proof of service delayed.

Plaintiff's fustrated [sic] cases are: CV11-9428DOC(OP); CV115962DOC(OP); CV12-7881DOC(OP).  The above stated obstacles impaired the ability of Plaintiff to present 'one's' case effectively and demonstrate actual injury." (*Id.* at 15:22-16:2.)

The Court disagrees with Defendants' initial contention that the First Amended Complaint fails to allege whether his Central District litigation involved a direct criminal appeal, a habeas petition, or a civil rights action.  Plaintiff's First Amended Complaint is accompanied by a copy of the Central District order, which states that he had pending in that court "two civil rights actions and . . . one habeas corpus petition." (ECF No. 3 at 26.) The Court construes the pleadings liberally and affords Plaintiff the benefit of the doubt. *Karim–Panahi*, 839 F.2d at 623.

However, Plaintiff fails to sufficiently plead a denial of access to courts claim.  First, he fails to allege any facts as to the underlying cause of action.  Merely attaching a copy of a court order which indicates pending habeas and civil rights actions is insufficient to describe the underlying cause of action, as required by *Christopher*.  Second, Plaintiff fails to allege any facts showing that he was actually denied access to the courts.  The First Amended Complaint alleges that Defendant Sterling deprived him of reasonable access to the law library, but Plaintiff does not allege facts showing that his inability to utilize the law library as he wished resulted in any actual injury with respect to his pending cases, *e.g.*, an inability to meet a deadline or to present a claim.

Plaintiff attempts to cure this pleading deficiency by arguing in his opposition that Defendant Sterling's actions frustrated his litigation efforts by causing delays in his court responses, copying services, research, and attainment of postage materials, and that these "obstacles impaired the ability of Plaintiff to present [his] case effectively and demonstrate actual injury." (ECF No. 13 at 15:14-16:2.)  However, these allegations are insufficient because they only serve to demonstrate that Plaintiff's litigation efforts were delayed, not that he suffered any actual injury as a result of these delays.  *See Sands*, 886 F.2d at 1171 (actual injury requires a "specific instance in which [an inmate] was actually denied access to the courts.").  Moreover, even if these allegations are sufficient to demonstrate actual

injury, they are not found in the First Amended Complaint.  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  This precludes consideration of "new" allegations that may be raised in Plaintiff's opposition to Defendants' motion to dismiss.  *Id.* ("The 'new' allegations contained in the inmates' opposition motion . . . are irrelevant for Rule 12(b)(6) purposes.  In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (citations omitted)).

Accordingly, the Court concludes that Plaintiff's First Amended Complaint fails to state a claim for denial of access to the courts.

  b.    Retaliation

  i.    Applicable Law

The Constitution provides protection against "[d]eliberate retaliation" by prison officials against an inmate's exercise of his right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (intentional obstruction of the right to seek redress "is precisely the sort of oppression that . . . section 1983 [is] intended to remedy."); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986)). Indeed, "[o]f fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances,' *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to 'pursue civil rights litigation in the courts.'  *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *see also Soranno's Gasco*, 874 F.2d at 1314 ("The right of access to the courts is subsumed under the first amendment right to petition the government for redress of grievances." (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Harrison*, 780 F.2d at 1427-28). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those

14

protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes*, 408 F.3d at 567 (citing *Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995) ("[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes.  That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits.")).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Id.* at 567-68 (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam) ("A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline.")).

Because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation.  *Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989).  However, "[r]etaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, Plaintiff must allege sufficient facts to plausibly suggest a nexus between the two."  *Rojo v. Paramo*, No. 13cv2237, 2014 U.S. Dist. LEXIS 80156, at *12-13 (S.D. Cal. June 10, 2014) (citing *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, *i.e.*, "after this, therefore because of this")).  "Thus, while 'the timing and nature' of an allegedly adverse action can 'properly be considered' as circumstantial evidence of retaliatory intent, the official alleged to have

15

retaliated must also be alleged to have been *aware* of the plaintiff's protected conduct." *Id.* at *13 (quoting *Soranno's Gasco*, 874 F.2d at 1315-16; *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent."); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (noting that "mere speculation that defendants acted out of retaliation is not sufficient" and affirming summary judgment where the record contained "nothing . . . to indicate [defendant] even knew about [an] earlier [law]suit.")).   Moreover, a plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act. *Soranno's Gasco*, 874 F.2d at 1314.

> ii.   *Analysis*

Defendants contend that Plaintiff has failed to state a retaliation claim in Counts 1 and 2 in connection with the April 2014 incidents.  Specifically, Defendants contend that Plaintiff cannot satisfy *Rhodes*' "adverse action" requirement because Defendant Sterling's allegedly false charges did not result in any punishment since both RVRs, dated April 5, 2014 and April 26, 2014, were subsequently dismissed and removed from Plaintiff's file, as demonstrated by Plaintiff's allegations and the exhibits attached to his First Amended Complaint.  (ECF No. 10-1 at 15:9-27.)

In support of this argument, Defendants rely on *Fields v. Lloren*, No. 1:09-cv-01733-AWI-MJS (PC), 2011 U.S. Dist. LEXIS 103086 (E.D. Cal. Sept. 12, 2011) ("*Fields I*"), wherein a magistrate judge recommended dismissal of a prisoner's retaliation claim. *Id.* at *6-7.  The magistrate judge concluded that the plaintiff had failed to adequately allege a retaliation claim where "[t]he rules violation report in question was reviewed by a senior prison official and it was determined that the report had no merit and all record of the report would be destroyed." *Id.* at *6.  The magistrate judge reasoned that the plaintiff could not allege a valid retaliation claim because the defendants' action resulted in no punishment, and "[w]ithout a finding of guilt and the issuance of some punishment, [p]laintiff has not suffered an adverse act." *Id.* at *6 (citing *Hudson v. Brian*, No. 1:08-cv-00249-SMS PC, 2009 U.S. Dist. LEXIS 130550, at *1 (E.D. Cal. July 17, 2009)).

However, Defendants' reliance on *Fields I* is misplaced.  Following the plaintiff's filing of an objection to the magistrate judge's recommendation, and "[u]pon further consideration of the matter in light of points raised in [the] objections," the magistrate judge vacated his findings and recommendation.  *See Fields v. Lloren*, No. 1:09-cv-01733-AWI-MJS (PC), 2011 U.S. Dist. LEXIS 146193, at *1 (E.D. Cal. Dec. 20, 2011) ("*Fields II*").  In other words, *Fields II* vacated *Fields I*, thereby diminishing any persuasive value of the initial recommendation.  Moreover, following *Fields II*, the magistrate judge issued a new order finding that the plaintiff's retaliation claim was cognizable.[8]  That order stated: "Even though the false report was eventually voided and not adjudicated by the Senior Hearing Officer," and the "Court's previous conclusion to the contrary notwithstanding, it appears that these allegations are indeed sufficient to satisfy the [adverse action] element[] of Plaintiff's retaliation claim."  (citing *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("Thus, the mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect.").

Thus, Defendants' argument that Plaintiff fails to allege adverse action in light of his allegations that the RVRs were subsequently dismissed and resulted in no punishment is unpersuasive.  Punishment is not a prerequisite to satisfying *Rhodes*' adverse action requirement.  The mere issuance of the allegedly false RVRs is sufficient to satisfy the first element of Plaintiff's retaliation claim, *i.e.*, adverse action.[9]

///

---

[8]    The Court takes judicial notice of the magistrate judge's subsequent order, dated December 29, 2011.  (*See* ECF No. 18 in *Fields v. Lloren*, E.D Cal., Case No. 1:09-cv-01733-AWI-MJS.)

[9]    The Court also finds that Plaintiff satisfies the second and third elements of his retaliation claim.  Specifically, Plaintiff alleges Defendant Sterling issued the false reports because of Plaintiff's protected conduct (*i.e.*, for Count 1, seeking PLU status in connection with his Central District actions; for Count 2, utilizing law library resources to make copies of documents necessary to effectuate service in those actions and the prior RVR and disposition underlying the incident alleged in Count 1).

17

However, Plaintiff's retaliation against Defendant Sterling fails because he alleges no facts that Defendant Sterling's actions chilled the exercise of his First Amendment rights or that her actions did not reasonably advance a legitimate correctional goal.  Plaintiff's conclusory arguments in opposition to Defendants' Motion to Dismiss that the adverse actions impeded his "research, materials, and process of service" and did "not reasonably advance any legitimate correctional goal" (ECF No. 13 at 19:4-6, 4:13-15) are wholly conclusory.  Moreover, these arguments cannot be considered in ruling on the adequacy of Plaintiff's allegations in the First Amended Complaint.  *See Schneider*, 151 F.3d at 1197 n.1.  Although the Court must liberally construe Plaintiff's *pro se* pleadings, the Court may not "supply essential elements of claims that were not initially pled."  *Ivey*, 673 F.2d at 268.  Although Plaintiff alleges he engaged in certain protected conduct and that Defendant Sterling took adverse actions against him as a result of his protected conduct, Plaintiff fails to meet the other elements required under *Rhodes*.[10]

Accordingly, the Court concludes that Plaintiff's First Amended Complaint fails to state a retaliation claim.

### c.   Due Process

The heading of Count 1 in Plaintiff's First Amended Complaint makes reference to a due process claim.  (ECF No. 3 at 3.)

#### i.   Applicable Law

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Bd. of*

---

[10]   Count 3 of the First Amended Complaint similarly fails to meet the fourth and fifth prongs of the *Rhodes* test.  Although Defendants do not move to dismiss the retaliation claim in Count 3 for failure to state a claim, the Court determines that dismissal of the Count 3 retaliation claim with leave to amend is proper for the same reasons discussed in connection with Plaintiff's retaliation claims in Counts 1 and 2.

18

*Regents v. Roth*, 408 U.S. 564, 569 (1972).  "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'"  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

<em>ii.</em>   <em>Analysis</em>

Despite Plaintiff's general reference to a due process claim (*see* ECF No. 3 at 3), Defendants' Motion to Dismiss does not address whether such a claim is adequately alleged.  Nevertheless, the Court finds the First Amended Complaint fails to state such a claim, and 28 U.S.C. §§ 1915(e)(2) and 1915A(b) authorizes the Court to sua sponte dismiss the claim.

Nowhere in the First Amended Complaint does Plaintiff allege facts plausibly suggesting that he suffered a deprivation of a liberty or property interest, or denial of process in connection with such an interest.  And even if he did, the fact that the charges were dismissed demonstrates that no due process violation occurred.  "[T]here is no due process violation when a procedural error is corrected through the administrative process." *Carrea v. California*, No. EDCV 07-1148-CAS (MAN), 2010 U.S. Dist. LEXIS 107902, at *52-53 (C.D. Cal. Aug. 25, 2010) (citing *Morrisette v. Peters*, 45 F.3d 1119, 1122 (9th Cir. 1995) ("There is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process."); *Torricellas v. Poole*, 954 F. Supp. 1405, 1414 (C.D. Cal. 1997) ("The administrative appeal is considered part of the process afforded, and any error in the process can be corrected during that appeals process without necessarily subjecting prison officials to liability for procedural violations at lower levels."); *see also McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) ("[T]he state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.").

/ / /

19

Accordingly, to the extent Plaintiff is alleging a due process claim in Count 1, the Court concludes that the First Amended Complaint fails to state a due process claim.

### d.   Cruel and Unusual Punishment

The heading of Count 1 in Plaintiff's First Amended Complaint makes reference to an Eighth Amendment cruel and unusual punishment claim.  (ECF No. 3 at 3.)

#### i.   *Applicable Law*

Prison conditions do not violate the Eighth Amendment unless they amount to "unquestioned and serious deprivations of basic human needs" or of the "minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).  "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eight Amendment.  To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoners' interest or safety."  *Whitely v. Albers*, 475 U.S. 312, 319 (1986).  To assert an Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must allege facts sufficient to fulfill two requirements: one objective and one subjective.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994).

Under the objective requirement, the prisoner must allege facts sufficient to show that the prison official's acts or omissions deprived him of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Farmer*, 511 U.S. at 834.  This objective component is satisfied so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety."  *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *see also Farmer*, 511 U.S. at 832; *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Under the subjective requirement, the prisoner must allege facts showing that the defendant acted with "deliberate indifference."  *Wilson*, 501 U.S. at 303; *Allen*, 48 F.3d at 1087.  "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from

20

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Wilson*, 501 U.S. at 302-303.

### ii.   Analysis

Despite Plaintiff's general reference to a cruel and unusual punishment claim (*see* ECF No. 3 at 3), Defendants' Motion to Dismiss does not address whether such a claim is adequately alleged.  Nevertheless, the Court finds the First Amended Complaint fails to state such a claim, and 28 U.S.C. §§ 1915(e)(2) and 1915A(b) authorize the Court to sua sponte dismiss the claim.

Nowhere in the First Amended Complaint does Plaintiff allege facts plausibly suggesting that Defendants impacted or threatened his ability to maintain "adequate food, clothing, shelter, sanitation, medical care, [or] personal safety," *Hoptowit*, 682 F.2d at 1246, or that prison officials knew of and disregarded "an excessive risk to [Plaintiff's] health and safety." *Farmer*, 511 U.S. at 837.

Accordingly, to the extent Plaintiff is alleging a cruel and unusual punishment claim in Count 1, the Court concludes that the First Amended Complaint fails to state an Eighth Amendment claim.

### e.   Supervisory Liability

Plaintiff's allegations against Defendants Balakian, Seibel, and Paramo are based on a theory of supervisory liability.  (*See* ECF No. 3 at 2.)

### i.   Applicable Law

"A supervisory official, such as a warden, may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Henry v. Sanchez*, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996) (citing *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991) (en banc); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  "[A] supervisor is liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or

knew of the violations and failed to act to prevent them." *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

### ii. Analysis

As against Defendant Balakian, Plaintiff alleges in Count 1 that after Defendant Sterling refused to receive his Form 22 Request on April 2, 2014, he presented the request to Defendant Balakian, who, Plaintiff assumes, instructed Defendant Sterling to respond. (*Id.* at 3.) Although this allegation contains an alleged over act, the allegation fails to allege wrongful conduct. Indeed, even liberally construed, Plaintiff does not allege that Defendant Balakian participated in or directed Defendant Sterling's allegedly wrongful actions or failed to prevent them. To the contrary, Plaintiff alleges that Defendant Balakian instructed Defendant Sterling to accept Plaintiff's Form 22 Request. This allegation against Defendant Balakian is insufficient to withstand Defendants' Motion to Dismiss.

As against Defendant Seibel, Plaintiff alleges in Count 3 that Defendant Seibel was "[i]n attendance" at the October 2014 ICC hearing whereupon Plaintiff was released from Administrative Segregation, assigned to a different facility pending adverse transfer, and had his work status revoked without adjudication of the RVR that resulted in his placement in Administrative Segregation. (ECF No. 3 at 5.) Plaintiff also alleges that during the ICC hearing he "explained that previous attempts to address [his] concern [about Defendant Sterling] were erroneously labelled as 'disciplinary' instead of staff misconduct, and denied. I put the committee on notice of this action." (*Id.*) However, Plaintiff does not allege that Defendant Seibel was personally involved in any wrongful conduct or constitutional violation. As a result, the allegations against Defendant Seibel are insufficient to withstand Defendants' Motion to Dismiss.

As against Defendant Paramo, Plaintiff fails to make any specific allegations of overt acts taken by Defendant Paramo. Rather, Plaintiff alleges that Defendant Paramo "was and/or should have been aware of on-going issue with K. Sterling's courses of conduct, over a period of time, that would lead any reasonably minded person to think that K. Sterling is unfit to continue as a Library Technical Assistant; was and/or should have been

aware of both subordinates K. Balakian and K.A. Seibel's acquiescence of K. Sterling's conduct, over a period of time, that would lead any reasonably minded person to think that these subordinate's [sic] knowingly and coherently entered into collusion with K. Sterling to conceal violation upon violation of federal constitutional rights to be free from retaliation and right to access to courts."  (ECF No. 3 at 2.)  These allegations are devoid of any specific factual allegations against Defendant Paramo, and such conclusory allegations are insufficient to withstand a Rule 12(b)(6) motion.  *See Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977) ("Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.").

In conclusion, Plaintiff's First Amended Complaint does not contain any specific factual allegations against Defendants Balakian, Seibel, or Paramo that would permit a claim to proceed against them based on a theory of supervisory liability.

### f.   Conclusion

Based on the foregoing, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint be **GRANTED**.  However, it is not readily apparent that amendment would be futile, and Plaintiff should be afforded leave to amend. *See Lopez*, 203 F.3d at 1127; *James*, 221 F.3d at 1077.

### 2.   Exhaustion of Administrative Remedies

Defendants contend that Count 3 should be dismissed because Plaintiff failed to exhaust administrative remedies as to the claims asserted therein.

### a.   Applicable Law

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is "mandatory." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002). Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones*

*v. Bock*, 549 U.S. 199, 204 (2007).  "In a typical PLRA case, a defendant will have to present probative evidence [in a Rule 56 motion for summary judgment] . . . that the prisoner has failed to exhaust administrative remedies under § 1997e(a)."  *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc).  However, "in . . . rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim."  *Id.* (citing *Jones*, 549 U.S. at 215-16; *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) ("[A]ffirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact."); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) ("[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.")).

    b.    Analysis

    Defendants contend that Plaintiff admits on the face of the First Amended Complaint that he failed to exhaust administrative remedies as to Count 3 before commencing this action.  (ECF No. 10-1 at 20:3-22.)  Defendants base their argument on the following statement in the First Amended Complaint, made by Plaintiff in response to an inquiry concerning whether he exhausted administrative remedies:  "'No', I have not exhausted administrative remeies [sic] for the claim dated: 10/17/14, where this matter is still pending adjudication, appeal if found guilty, and determination of emergency appeal on adverse transfer."  (ECF No. 3 at 6.)  Defendants contend this admission conclusively establishes that Plaintiff did not exhaust administrative remedies in connection with the claims against Defendants Sterling and Seibel in Count 3.

    Plaintiff argues in his opposition that Defendants' reference to this statement is misleading because it fails to acknowledge the very next statement, wherein Plaintiff wrote: "As of 11/6/14, the third generated Rule Violation Report by K. Sterling has been dismissed.  This is indicative of the continuous false reports stated, herein, and concludes adjudication of the RVR dated 10/17/14."  (*Id.*)  Plaintiff argues that the "partial statement"

24

indicating that he did not exhaust the Count 3 claims was "corrected and updated to demonstrate exhaustion." (ECF No. 13 at 11:8-11.) Plaintiff argues Defendants intentionally omitted reference to his subsequent statement demonstrating exhaustion.

In their reply, Defendants contend: "As to exhaustion of the October 17, 2014 incident, Plaintiff argues that he eventually exhausted this claim—but admits that this was only after filing the lawsuit." (ECF No. 14 at 3:16-18.)

The Court finds that this is not one of the rare case where a failure to exhaust is clearly manifest on the face of the complaint. Specifically, although Plaintiff's initial statement appears to admit that he did not exhaust Count 3, the very next sentence suggests that he did. Plaintiff explains that his original statement was "corrected and updated to demonstrate exhaustion." Faced with these two seemingly contradictory statements in the First Amended Complaint[11], the Court cannot conclude that it is clear from the face of the First Amended Complaint that Plaintiff failed to exhaust his claims in Count 3.

Defendants incorrectly argue that Plaintiff "eventually exhausted this claim—but admits that this was only after filing the lawsuit." (ECF No. 14 at 3:16-18.) Plaintiff's clarifying statement alleges that the RVR stemming from the October 17, 2014 incident had been dismissed as of November 6, 2014. Plaintiff did not sign and mail his initial Complaint until the following day (*see* ECF No. 1 at 7-8), and the Complaint was not filed on the docket until November 12, 2014. Thus, Plaintiff's clarifying statement suggests that exhaustion occurred prior to the commencement of this action.

In conclusion, the Court finds that it cannot be determined at this stage based on a review of the First Amended Complaint that Plaintiff failed to exhaust administrative remedies as to the claims asserted in Count 3.

/ / /

/ / /

---

[11] These same two statements were also included in Plaintiff's initial Complaint. (*See* ECF No. 1 at 6.)

# III. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Gonzalo P. Curiel pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3.  For the reasons outlined above, IT IS HEREBY RECOMMENDED that the District Judge issue an order **GRANTING** Defendants' Motion to Dismiss the First Amended Complaint.  IT IS FURTHER RECOMMENDED that Plaintiff be afforded leave to file a Second Amended Complaint to cure the pleading defects mentioned herein.

IT IS FURTHER ORDERED that no later than **January 5, 2016**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be filed with the Court and served on all parties no later than **January 15, 2016**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: December 15, 2015

_____
DAVID H. BARTICK
United States Magistrate Judge

14cv2691-GPC (DHB)