1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11  CURTIS CLIFFORD INGRAM,          Case No.:  3:14-cv-02691-GPC-DHB

12                       Plaintiff,  **ORDER ADOPTING REPORT &**
                                     **RECOMMENDATION AND**
13  v.                               **GRANTING IN PART AND**
                                     **DENYING IN PART DEFENDANTS'**
14  K. STERLING et. al.,             **MOTION TO DISMISS**

15                       Defendants. [ECF Nos. 10, 16]
16
17

18                              **Introduction**

19         Plaintiff Curtis Clifford Ingram ("Plaintiff") is a state prisoner proceeding *pro se*

20  and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  (Compl.,

21  ECF No. 1.)[1]  Plaintiff filed a First Amended Complaint ("FAC") on December 31, 2014,

22  in which he asserts a variety of claims against Defendants K. Sterling, K. Balakian, K.A.
23
24
25
26  _____

27  [1] Page numbers for docketed materials cited in this order refer to those imprinted by the
28  Court's electronic case filing ("ECF") system.

Seibel, and Warden Paramo (collectively "Defendants").[2]  Pending before the Court is Defendants' Motion to Dismiss Plaintiff's FAC.  (Def. Mot., ECF No. 10.)  Pursuant to 28 U.S.C. 6336(b)(1)(A), United States Magistrate Judge Bartick submitted a Report and Recommendation ("Report") to this Court recommending the Motion to Dismiss be granted in part and denied in part.  (Report, ECF No. 16.)  Judge Bartick required the parties to file objections by January 15, 2016.  The parties did not file any objections. Having considered the parties submissions and the applicable law, the Court **ADOPTS** the Honorable Judge Bartick's Report and Recommendation and **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss.

### Background

Plaintiff commenced this action on November 12, 2014, by filing a Complaint and Motion for Leave to Proceed *In Forma Pauperis*.  (ECF Nos. 1, 2.)  On December 31, 2014, Plaintiff filed the FAC.  (Compl., ECF No. 3.)  On February 9, 2015, this Court granted Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* and, following an initial screening of the FAC pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), directed U.S. Marshal service of the FAC on Plaintiff's behalf.  (Order, ECF No. 4.)

Plaintiff alleges that on April 2, 2014, Defendant Sterling, a library technical assistant, denied his request for Priority Legal User ("PLU") status even though he had a court order from the Central District of California demonstrating extraordinary circumstances warranting such status.[3]  Defendant Sterling allegedly told Plaintiff, "PLU

---

[2] Plaintiff sues Defendant Sterling in her individual capacity only, but he sues the remaining individuals in their individual and official capacities. (Compl. at 2, ECF No. 3.)

[3] Plaintiff provided a court order from the Central District of California which advised "the Warden and other custodial officials" that Plaintiff had two pending civil trials and one habeas corpus petition. (Compl. at 26, ECF No. 3.)  The order stated that "Plaintiff needs access to, among other things, all legal documents, copying services, writing materials, the prison law library, as permitted by prison rules, to properly and adequately represent himself in the pending proceedings."  (*Id.*)

status is basically for lockdowns and modified program," which, Plaintiff alleges is contrary to California Code of Regulations §§ 3122(b)(1) and 3122(b)(6).[4]

Plaintiff alleges that Defendant Sterling manufactured incident narratives and issued Rule Violation Reports ("RVRs") against him that were false.  On three separate occasions Defendant attended administrative hearings regarding Defendant Sterling's allegations, and the administrative panel found him not guilty of any rules violations. Plaintiff also asserts that prior to these events he generated a CDCR Form 22 Request for Interview, Item, or Service Form directed at Defendant Sterling, but Defendant Sterling refused to receive it.  Plaintiff then forwarded the request to Defendant Balakian, after which Defendant Sterling responded to the request only by stating that Plaintiff had

_____

[4] California Code of Regulations § 3122(b) provides, in part:

> Inmates who have established court deadlines may apply for Priority Legal User (PLU) status to the prison law libraries.  Inmates who are granted PLU status based on their application shall receive higher priority to prison law library resources than other inmates.  All inmates who are not on PLU status are on General Legal User (GLU) status.
>
> (1) An established court deadline may be either a court imposed deadline for an active case or a statutory deadline.  Inmates who apply for PLU status based on a court imposed deadline must show documentation from the court to verify that deadline.  Inmates who apply for PLU status based on a statutory deadline must identify the legal rule that compels the deadline.
>
> . . .
>
> (6) An inmate may receive PLU status within 30 calendar days of his or her established court deadline unless the inmate can demonstrate need for a longer period of PLU status based on extraordinary circumstances beyond the inmate's control.

CAL. CODE REGS. § 3122(b)(1), (6).

violated California Code of Regulations § 3086 because he delivered the request to inmate clerks.[5]  Plaintiff then generated a second Form 22 Request through Sergeant Kang, who signed off on and delivered the request.  Defendant Sterling never responded to this request.

Aside from generating these allegedly false reports, Defendant Sterling also allegedly obstructed Plaintiff from using the library and defending his case.  On one occasion, Plaintiff attempted to make copies of an RVR so he could attach them to a CDCR 602 Appeal/Grievance Form, and according to the Plaintiff, Defendant Sterling exceeded the permissible scope of her duties by making additional copies of the documents for herself.  On another occasion, Defendant Sterling had Plaintiff escorted from the library claiming that he caused a disturbance, which he denies.  Plaintiff asserts that Defendant Sterling manufactured these reports to cause him to lose his job assignment and cause him to be placed on C-Status—which limits law library access and would force him to send his entertainment appliances home.  Furthermore, Plaintiff claims that the remaining defendants were aware of Defendant Sterling's pattern of behavior but were indifferent to it.

Plaintiff filed three separate claims against Defendants, but the claims are factually related and assert many of the same causes of action:

1. Denial of the right to access to the courts, retaliation, supervisor liability, deliberate indifference, acquiescence of actions, denial of due process, and cruel and unusual punishment;

2. Denial of the right to access to the courts, retaliation, supervisor liability, and deliberate indifference, acquiescence of actions; and

---

[5] California Code of Regulations § 3086 provides, in pertinent part: "When seeking response to a written request for an interview, item, or service, the inmate . . . shall complete the Request for Interview, Item or Service form to describe his or her request. The inmate shall deliver or mail via institutional mail the completed form to any staff member who is able to respond to the issue."  CAL. CODE REGS. § 3086(e).

3. Denial of the right to access to the courts, retaliation, supervisor liability, and deliberate indifference.

Based on the foregoing, Plaintiff's causes of action are summarized as: (1) denial of access to the courts; (2) retaliation; (3) supervisor liability, acquiescence of actions, and deliberate indifference; (4) denial of due process; and (5) cruel and unusual punishment.

On May 4, 2015, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot., ECF No. 10.) Defendants contend the FAC should be dismissed because: (1) Plaintiff fails to state a claim in any of his three counts; and (2) the face of the FAC demonstrates that Plaintiff failed to exhaust administrative remedies as to Count 3. (*Id.* at 2.) Plaintiff filed an Opposition on June 5, 2015. (Pl.'s Opp'n, ECF No. 13.) Defendants filed a reply on June 9, 2015. (Def.'s Reply, ECF No. 14.)

## Discussion

**A.**  **Legal Standards**

### 1.  **Rule 12(b)(6) Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, courts may consider exhibits that are attached to the complaint. *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.) However, exhibits that contradict the allegations of a complaint may fatally undermine the complaint's allegations. *See Sprewell v. Golden State Warriors*,

5

266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims." (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."))).

A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Citation omitted.] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

"All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed. v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988 (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 570 (when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

### 2.    Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

"In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt." *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). The rule, however, "applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).

Nevertheless, a court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)). Thus, before a

*pro se* civil rights complaint may be dismissed, the Court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi*, 839 F.2d at 623–24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

### 3. The Authority of Magistrate Judges

"The power of federal magistrate judges is limited by 28 U.S.C. § 636." *Estate of Conners ex rel. Meredith v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993) (citing *Reynaga v. Cammisa*, 971 F.2d 414, 416 (9th Cir. 1992)).

Under 28 U.S.C. § 636(b)(1)(A), a district court judge may designate a magistrate judge ". . . to hear and determine any pretrial matter pending before the court, except a motion…to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." *Hunt v. Piller*, 384 F.3d 1118, 1123 (9th Cir. 2004). However, the district court may "designate a magistrate judge to hear a motion to dismiss and submit proposed findings of fact and recommendations for the disposition of such a motion" under 28 U.S.C. § 636(b)(1)(B). *Id.* at 1123. Within fourteen days any party may serve and file written objections to a magistrate judge's findings in the report and recommendation. *See* 28 U.S.C. § 636(b)(1). Once objections are made "[a] judge of the court shall make a de novo determination of those portions of the report…to which objection is made." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

### B. Analysis

Defendants assert that Plaintiff's FAC fails to state a claim, and as to Count 3, Plaintiff failed to exhaust administrative remedies.

### 1. Effect of Court's Screening Order

After undertaking a de novo review of the Honorable David H. Bartick's Report and Recommendation, the Court agrees that the Court's sua sponte screening order pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) does not prevent Defendants from filing a subsequent Rule 12(b)(6) motion as the "sua sponte screening process is

cumulative of, not a substitute for" such a motion.  *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007); *see also id.* at 1120 ("At the time of the initial screening, the complaint was liberally construed without the benefit of briefing from Defendants.").[6] Based on the foregoing, the Court's prior Screening Order does not preclude the Court from ruling on this Rule 12(b)(6) motion and the Court accepts the findings and the recommendations made by the magistrate judge as to this part.

### 2.  Exhaustion of Administrative Remedies

The Court adopts the Honorable David H. Bartick's findings that it is not obvious from the face of Plaintiff's FAC that he did not exhaust his administrative remedies as to Count 3.

In order for Plaintiff to bring a claim under 42 U.S.C. § 1983, he must first exhaust his administrative remedies.  42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001).  Defendants assert that it is clear from the face of the FAC that he did not exhaust administrative remedies as to Count 3.  *See Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) (citing *Jones*, 549 U.S. at 215-16) (finding that "where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim.")

It is not clear from the face of the Plaintiff's complaint that he has not exhausted his administrative remedies.  Although Plaintiff states in the FAC, "No, I have not exhausted administrative remedies [sic] for the claim dated: 10/17/14, where this matter is still pending adjudication," in the very next statement he states that "[a]s of 11/6/14" the claim dated 10/17/14 had concluded.  (Compl. at 6, ECF No. 3.)  At a minimum, these two statements contradict each other and prevent the Court from finding that it is

---

[6] The Court also cautioned the Plaintiff in its February 9, 2015 Screening Order that Defendant could still choose to bring a Rule 12(b)(6) motion if they chose to do so. (*See* Order at n. 3, ECF No. 4.)

clear from the face of the complaint that Plaintiff did not exhaust his administrative remedies as to Count 3.

Accordingly, the Court concludes that Count 3 cannot be dismissed at this time for failure to exhaust administrative remedies.

### 3. Failure to State a Claim

    a.   <u>Denial of Access to the Courts</u>

Defendants argue that Plaintiff's claim for denial of access to the courts fails because Plaintiff failed to state a claim. Defendant argues that Plaintiff failed to plead facts that show he actually suffered an injury. Plaintiff contends that he asserted an actual injury when he claimed that Defendant Sterling abused her discretion in obstructing his access to the prison law library. Plaintiff argues that this effectively prevented him from adequately presenting his case.

The well-pleaded complaint rule allows the Court to take notice of documents attached to the Complaint. *See* FED. R. CIV. P. 10(c); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978))). The Court construes the complaint liberally to benefit the *pro se* litigant. *Karim-Panahi*, 839 F.2d at 623. Plaintiff's First Amended Complaint appending the Central District Order as an exhibit shows that he has pending in the Central District litigation "two civil rights actions and . . . one habeas corpus petition" (Compl. at 26, ECF No. 3.) Thus, Plaintiff has met the preliminary burden of showing a pending litigation.

However, the Court agrees with the Honorable David H. Bartick's findings that Plaintiff has not properly pled a denial of access to the courts claim. First, he failed to adequately describe "the underlying cause of action." *See Christopher*, 536 U.S. at 415. Second, Plaintiff fails to allege any facts that show an actual injury that prejudiced him in his existing litigations. *Lewis*, 518 U.S. at 348, 353.

//

//

1

*i.*     *Applicable Law*

2        Prisoners "have a constitutional right to petition the government for redress of their

3   grievances, which includes a reasonable right of access to the courts."  *O'Keefe v. Van*

4   *Boening*, 82 F.3d 322, 325 (9th Cir. 1996); *accord Bradley v. Hall*, 64 F.3d 1276, 1279

5   (9th Cir. 1995) ("A prisoner's right to meaningful access to the courts, along with his

6   broader right to petition the government for a redress of his grievances under the First

7   Amendment, precludes prison authorities from penalizing a prisoner for exercising those

8   rights.").  However, the right of access to the courts is limited to non-frivolous direct

9   criminal appeals, habeas corpus proceedings, and § 1983 actions.  *See Lewis v. Casey*,

10  518 U.S. 343, 353 n.3, 354-55 (1996).

11       To establish a violation of the right of access to the courts, a prisoner must allege

12  facts sufficient to show that: (1) a non-frivolous legal attack on his conviction, sentence,

13  or conditions of confinement has been frustrated or impeded; and (2) he has suffered an

14  actual injury as a result.  *Id.* at 352-53.  An "actual injury" is "actual prejudice with

15  respect to contemplated or existing litigation, such as the inability to meet a filing

16  deadline or to present a claim."  *Lewis*, 518 U.S. at 348-49 (citation and internal

17  quotations omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008)

18  (explaining that "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated'

19  is fatal" to a claim for denial of access to legal materials) (citing *Lewis*, 518 U.S. at 353

20  & n.4).

21       In *Christopher v. Harbury*, the Supreme Court held that in order to state a claim for

22  a deprivation of a constitutional right to access to the courts a plaintiff must allege: (1) an

23  underlying cause of action which should be adequately described in the complaint, and

24  (2) the actions by officials that caused the denial of access to the courts.  536 U.S. 403,

25  415 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element

26  that must be described in the complaint, just as much as allegations must describe the

27  official acts frustrating the litigation.").  Furthermore, a plaintiff must identify "the

28  remedy sought" to establish that the violation of Plaintiff's right to access the courts

entitles him to some relief that is not available under an already existing claim.  *See id.* at 416.

### ii.   *Analysis*

Plaintiff failed to allege facts describing his underlying cause of action.  Plaintiff attached a copy of a court order that states he has pending litigations in the Central District, but the court order does not describe what the underlying claims are.  Plaintiff identifies "the remedy sought" by bringing his denial of access to the courts claim. (Compl. at 7, ECF no. 3.)  However, the underlying policy of this requirement that the relief being sought should be different from remedies available through existing claims is frustrated by Plaintiff's failure to state his underlying causes of action.  *See Christopher*, 536 U.S. at 416.

Furthermore, Plaintiff did not plead facts that show Defendants' actions resulted in an actual injury.  Plaintiff asserts that Defendant Sterling frustrated his litigation efforts by obstructing his access to the prison law library, by filing false rule violation reports against him, and by refusing to make copies of some of his court documents.  (Compl. at 3-5, ECF No. 3.)  In Plaintiff's Opposition, he claims that Defendant Sterling's actions caused him delays in his court responses, copying services, research, and attainment of postage materials, and that these "obstacles impaired the ability of Plaintiff to present [his] case effectively and demonstrate actual injury."  (Pl.'s Opp'n at 15-16, ECF No. 13.)  However, Plaintiff does not assert that any of these delays actually affected the outcome of his pending litigations—e.g., by alleging that these delays prevented him from pursuing a valid claim, caused him to miss a deadline, or some other specific "instance in which [he] was actually denied access to the courts."  *See Lewis*, 518 U.S. at 348; *Sands v. Lewis*, 886 F.2d 1166, 1171(9th Cir. 1989) *overruled on other grounds by Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (2011).

Plaintiff also asserts that Defendant Sterling made unauthorized copies of a rule violation report and disposition for herself, but he fails to allege that this harmed him in any way.  *See Lewis v. Casey,* 518 U.S. 343, 351 (1996) (explaining that "[c]orrectional

officials may interfere with an inmate's right of access to the courts by reading that inmate's legal papers if the defendants' actions have harmed the inmate's ability to pursue a legal claim); *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (2011), *abrogated on other grounds by Richey v. Dahne*, 807 F.3d 1202 (2015) (finding that prisoner's complaint survived dismissal where he alleged that officials repeatedly transferred him between prisons and withheld his legal files, which resulted in an actual injury of two of his pending litigations being dismissed); *see also Cody v. Weber,* 256 F.3d 764, 768 (8th Cir. 2001) (finding the actual injury requirement satisfied where prison officials read Plaintiff's legal documents, obtaining an unfair advantage in defending themselves against Plaintiff's claims against them).  Plaintiff does not allege that Defendant Sterling's copying the rule violation report and disposition gave her any unfair advantage in defending herself against Plaintiff in any pending litigations, nor does he allege that it had any effect on his pending litigations.

Plaintiff attempts to satisfy the actual injury requirement by alleging in his opposition that Defendant Sterling's actions caused delay in his court responses, copying services, research, and attainment of postage materials.  (Pl.'s Opp. at 15-16, ECF No. 13).  Plaintiff claims that these "obstacles impaired the ability of Plaintiff to present [his] case effectively and demonstrate actual injury."  Plaintiff's allegations only show a delay in his litigation efforts, and still do not satisfy the actual injury requirement.  *See Sands*, 886 F.2d at 1171 (actual injury requires a "specific instance in which [an inmate] was actually denied access to the courts.")  Thus, the Court agrees with the Magistrate Judge that the actual injury requirement is not satisfied.

However, the Court respectfully disagrees with the Magistrate Judge's observation that even if these allegations regarding delay are sufficient to demonstrate actual injury, they are new and are not found in the FAC.  The Ninth Circuit has observed that "[t]he focus of any Rule 12(b)(6) dismissal . . . is the complaint."  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  This precludes consideration of "new" allegations that may be raised in Plaintiff's opposition to Defendants' motion to dismiss.

*Id.* ("The 'new' allegations contained in the inmates' opposition motion . . . are irrelevant for Rule 12(b)(6) purposes.  In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (citations omitted). However, the Court must accept non-conclusory factual content as true and must draw reasonable inferences from that content.  *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  In the instant case, Plaintiff asserted multiple instances in which Defendant Sterling allegedly denied him access to the prison law library.  (Compl. at 3-5, ECF No.3.)  The Court finds it reasonable to draw an inference that these denials caused a delay in Plaintiff's research and court responses, because these tasks required access to the prison library.  What is missing is the nexus between any delay in completing such tasks and any alleged negative impact upon the outcome of Plaintiff's pending cases.

Accordingly, the Court agrees with the Magistrate Judge's conclusion that Plaintiff has failed to sufficiently plead a violation of his right to access the courts because he did not describe the underlying cause of action in his FAC and he failed to allege an actual injury.  Plaintiff can cure these defects by alleging facts describing his underlying cause of action and by alleging an actual harm, such as a negative outcome in his underlying cause of action, caused by Defendant Sterling's conduct.

            b.    <u>Retaliation</u>

Defendants argue that the retaliation claim should be dismissed because Plaintiff failed to state a Retaliation claim.  Defendant claims that Plaintiff did not suffer any adverse action because Defendant Sterling's allegations against Plaintiff were dismissed through the administrative process.  Plaintiff argues that he did suffer adverse action because he lost privileges, lost his prison job, spent time in Ad-Seg, and had his property confiscated.

Although Plaintiff satisfied some of the *Rhodes* elements required to establish a retaliation claim, that a prison official took adverse action because of prisoner's protected

conduct, Plaintiff failed to prove that the retaliatory action chilled or infringed his First Amendment rights.  Plaintiff also failed to allege facts showing that Defendant Sterling's actions did not serve a legitimate correctional goal.

### i.    Applicable Law

The Constitution provides protection against "[d]eliberate retaliation" by prison officials against an inmate's exercise of his right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (intentional obstruction of the right to seek redress "is precisely the sort of oppression that . . . section 1983 [is] intended to remedy.")  Indeed, "[o]f fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances,' and to 'pursue civil rights litigation in the courts.'" *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (citations omitted).  "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."  *Rhodes*, 408 F.3d at 567 (citing *Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995) ("[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes. That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits.")).

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.  *Id.* at 567-68 (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).

Such claims must be evaluated in light of the deference that must be accorded to prison officials. *See Pratt*, 65 F.3d at 807; *see also Vance v. Barrett*, 345 F.3d 1083, 1093 (9th Cir. 2003). "[W]hile 'the timing and nature' of an allegedly adverse action can 'properly be considered' as circumstantial evidence of retaliatory intent, the official alleged to have retaliated must also be alleged to have been *aware* of the plaintiff's protected conduct." *Soranno's Gasco*, 874 F.2d at 1315-16; *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent."); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (noting that "mere speculation that defendants acted out of retaliation is not sufficient" and affirming summary judgment where the record contained "nothing . . . to indicate [defendant] even knew about [an] earlier [law]suit.")). The prisoner must submit evidence to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Compare Pratt*, 65 F.3d at 807 (finding insufficient evidence), *with Valandingham v. Bojorquez*, 866 F.2d 1135, 1138-39 (9th Cir. 1989) (finding sufficient evidence). Moreover, a plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act. *Soranno's Gasco*, 874 F.2d at 1314.

Finally, the prisoner must demonstrate that the alleged retaliatory action chilled her or his First Amendment rights. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (explaining that in *Rhodes*, 408 F.3d at 568-69, the court explicitly held that an objective standard governed the chilling inquiry; the plaintiff need not show that his or her speech was actually inhibited or suppressed); *Rhodes*, 408 F.3d at 568 (explaining that, at the pleading stage, a prisoner is not required "to demonstrate a *total* chilling of his [or her] First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim. Speech can be chilled even when not completely silenced.") Because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation. *Thomas v. Carpenter*, 881 F.2d 828, 829-30 (9th Cir. 1989).

*ii.    Analysis*

Plaintiff satisfied the first three elements of *Rhodes* by alleging that Defendant Sterling generated three separate false rule violation reports, one of which resulted in his placement in Ad-Seg (confinement) for a week.  The fact that all three rule violation reports did not result in any punishment because they were dismissed and removed from Plaintiff's file is inconsequential to finding that Defendant Sterling took "adverse action" against the Plaintiff.  In *Fields v. Lloren*, the magistrate judge overruled his previous finding that a retaliation claim cannot be supported when defendant's action resulted in no punishment to the Plaintiff.  No. 1:09-cv-01733-AWI-MJS (PC), 2011 U.S. Dist. LEXIS 146193, at *1 (E.D. Cal. Dec. 20, 2011).  Instead, the magistrate judge concluded that the mere filing of the rules violation report satisfies the adverse act requirement.  *See id.* (citing *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("Thus, the mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect.")).  Likewise, Defendant Sterling's mere issuance of the allegedly false rule violation reports satisfies *Rhodes*' "adverse action" requirement.

Plaintiff, however, has not asserted a nexus between the adverse action and a chilling effect on his First Amendment rights, and thus has not asserted a cognizable retaliation claim.  While courts have recognized retaliation claims based on prison officials: (1) withholding a prisoner's personal property; (2) holding the prisoner in confinement; and (3) from filing rule violation reports, courts have only done so where the injury asserted is the action's chilling effect on First Amendment rights.  *See Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (finding that prisoner's assertion that the prison official's false accusations, which resulted in 10 days confinement, infringed his First Amendment rights and satisfied the "chilling effect" requirement.); *see also Fields*, No. 1:09-cv-01733-AWI-MJS (PC), 2011 U.S. Dist. LEXIS 146193, at *1; *cf. Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (without alleging a chilling effect, a retaliation claim alleging other harm is not actionable).  Plaintiff has stated that Defendant Sterling allegedly filed three separate rule violation reports, one of which resulted in him being

placed in confinement for a week. (Compl. at 5, ECF No. 3.)  He also alleged that she filed one of the reports with the intent to cause him to lose access to his personal property, but he has failed to relate these allegations to a "chilling effect on his First Amendment rights."  (*Id.* at 4.)

Accordingly, the Court agrees with Magistrate Judge Bartick's finding that the FAC fails to state a retaliation claim.

### c.   Due Process

Although Defendants do not raise the issue of whether Plaintiff properly alleged a due process claim in their Motion to Dismiss, the Court agrees with Magistrate Judge Bartick's findings that the First Amended Complaint fails to state such a claim, and 28 U.S.C. §§ 1915(e)(2) and 1915A(b) authorize the Court to sua sponte dismiss the claim.

### i.   *Applicable Law*

The Fourteenth Amendment provides that "[n]o state shall…deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV § 1.  The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake.  *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977); *Bd. of* 139 *Regents v. Roth*, 408 U.S. 564, 569 (1972); *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003).  "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process."  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).  A prisoner's protections under the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted).  "Discipline by prison

3:14-cv-02691-GPC-DHB

officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *See id.*

### ii.   Analysis

Plaintiff does not allege any facts that show that the government deprived him of any protected property or liberty interest through a lack of process. (*See* Compl. at 3-5, ECF No. 3.) Plaintiff alleges facts showing that he was subjected to punishment, including confinement, after allegedly false accusations by Defendant Sterling. However, punishment of prisoners for alleged misconduct by prison officials is one of the "ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484-85. Furthermore, the fact that Defendant Sterling's accusations may have been false is irrelevant because the charges against Plaintiff were dismissed through the administrative process. *See Morrisette v. Peters*, 45 F.3d 1119, 1122 (9th Cir. 1995) ("There is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process.").

Accordingly, Plaintiff has not properly alleged a due process claim because he has not alleged that the government deprived him of any property or liberty interest.

### d.   Cruel and Unusual Punishment

Although Defendants do not raise the issue of whether Plaintiff properly alleged a cruel and unusual punishment claim in their Motion to Dismiss, the Court agrees with Magistrate Judge Bartick's findings that the First Amended Complaint fails to state such a claim, and 28 U.S.C. §§ 1915(e)(2) and 1915A(b) authorize the Court to sua sponte dismiss the claim.

### i.   Applicable Law

A cruel and unusual punishment claim involves a subjective and an objective element. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994). The objective element requires a prisoner to allege that a prison official's act or omission "result[ed] in the denial of 'the minimal civilized measure of life's necessities.'" *See Farmer*, 511 U.S. at 834. The prisoner must show that prison

1    official's used excessive force or deprived him of "adequate food, clothing, shelter,

2    sanitation, medical care, and personal safety." *Hoptowitt  v. Ray*, 682 F.2d 1237, 1246

3    (9th Cir. 1982) *abrogated on other grounds by Sandin v. Conner,* 515 U.S. 472, 132

4    L.Ed.2d 418 (1995); *see also Farmer*, 511 U.S. at 832; *Wright v. Rushen*, 642 F.2d 1129,

5    1132-33.  The subjective element is met if a prison official has a 'sufficiently culpable

6    state of mind.'" *Farmer*, 511 U.S. at 834 (citations omitted); *see also Hope v. Pelzer*,

7    536 U.S. 730, 737-38 (2002); *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir.

8    2014).  A Plaintiff must prove that a prison official "acted with deliberate indifference or

9    that their conduct was so reckless as to be tantamount to a desire to inflict harm." *Starr v.*

10   *Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).  "Deliberate indifference" exists when a

11   prison official "knows of and disregards an excessive risk to inmate health and safety; the

12   official must be both aware of facts from which the inference could be drawn that a

13   substantial risk of serious harm exists, and he must also draw the inference." *Farmer*,

14   511 U.S. at 837; *see also Wilson v. Seiter*, 502 U.S. 294, 302-03 (1991).

15                              ii.    *Analysis*

16          Plaintiff alleges no facts that suggest the defendants failed to provide him with

17   "adequate food, clothing shelter, sanitation, medical care, [or] personal safety."

18   *Hoptowitt*, 682 F.2d at 1246.  Furthermore, Plaintiff fails to allege any facts from which

19   an "inference could be drawn that a substantial risk of harm existed," let alone actually

20   making such an inference.  *Farmer*, 511 U.S. at 837; *see also Wilson*, 502 U.S. at 302-03.

21          Accordingly, Plaintiff failed to allege that prison officials deprived him of life's

22   minimal necessities and that they acted with the required state of mind.  Thus, the First

23   Amended Complaint fails to state an Eighth Amendment claim.

24                       e.    Supervisor Liability

25          Defendants argue that Plaintiff's claims based on supervisor liability should be

26   dismissed because there is no respondeat superior liability allowed under section 1983

27   unless the person participates in civil rights violations.  Defendant asserts that Plaintiff

28   does not assert that any of Defendant Sterling's supervisors participated in the civil rights

violations.  Plaintiff argues that Defendant Sterling's supervisors acquiesced to her conduct, creating a custom that encouraged Defendant Sterling's conduct. However, Plaintiff does not allege sufficient facts that show that any of the aforementioned Defendants personally participated in or directed violations of Plaintiff's rights.

*i.     Applicable Law*

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")  "For an official to be liable for another actor's depriving a third party of his constitutional rights, that official must have at least the same level of intent as would be required if the official were directly to deprive the third party of his constitutional rights." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc).  "[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011). In such circumstances, the supervisor is liable because of his or her own actions or inactions, not for the actions of his or her subordinate. *See id.*

*ii.     Analysis*

Plaintiff's claims against Defendants Balakian, Seibel, and Paramo are based on a theory of supervisor liability.  (*See* Compl. at 2, ECF No. 3.)  Plaintiff's only reference to Defendant Balakian is that he likely instructed Defendant Sterling to respond to Plaintiff's CDCR Form 22 Request.  If anything, this enforces the notion that Defendant

21

Balakian attempted to uphold Plaintiff's rights.  Plaintiff's only mention of Defendants Seibel and Paramo are that they were present at one of his disciplinary hearings.  None of these claims show that Defendants participated in or directed any violations of Plaintiff's rights.

Plaintiff's allegations against Defendants Balakian, Seibel, and Paramo, essentially amount to a deliberate indifference claim that Defendants were aware of Defendant Sterling's actions and acquiesced to them.  Plaintiff has not properly pled any violations of his constitutional rights by Defendant Sterling.  Even if this was not the case, Plaintiff fails to state any facts that show Defendants Balakian, Seibel, and Paramo acted with the intent to deprive Plaintiff of any constitutional rights.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc).  Plaintiff's allegations are nothing more than conclusory statements, and thus are insufficient to survive a motion to dismiss.  *See Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977).

Accordingly, the court finds that Plaintiff failed to plead sufficient facts supporting a claim of supervisor liability against Defendants.

**C.**   **Conclusion**

Based on the foregoing, the Court **ADOPTS** the findings and recommendations of the Honorable David H. Bartick and **GRANTS** Defendants' Motion to Dismiss Plaintiff's FAC.  The Court also agrees that it is not apparent that the Plaintiff cannot cure the defects of his complaint, and Plaintiff is afforded leave to amend.  *See Lopez*, 203 F.3d at 1127; *James*, 221 F.3d at 1077.  Plaintiff may file an amended complaint, if any, on or before **May 1, 2016**.

**IT IS SO ORDERED**.

Dated:  March 29, 2016

Hon. Gonzalo P. Curiel
United States District Judge