UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS CLIFFORD INGRAM,<br><br>                                   Plaintiff,<br><br>v.<br><br>K. STERLING, et al.,<br><br>                                   Defendants. | Case No.:  14-cv-02691-GPC (DHB)<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS PORTIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**(ECF No. 22)** |

Plaintiff Curtis Clifford Ingram ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff commenced this action on November 12, 2014, in which he asserted a variety of claims against Defendants K. Sterling, K. Balakian, K.A. Seibel, and Warden Paramo (collectively, "Defendants").  (ECF No. 1.)[1]  On April 15, 2016, Plaintiff filed a Second

---

[1]    Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing ("ECF") system, unless prefaced by a p. or pp.

Amended Complaint ("SAC") against Defendants.  (ECF No. 18.)[2]  Pending before the Court is Defendants' Motion to Dismiss Portions of Plaintiff's SAC.  (ECF No. 22.) [3]

After a thorough review of the pleadings, the parties' papers and all supporting documents, this Court hereby **RECOMMENDS** that Defendants' Motion to Dismiss Portions of Plaintiff's SAC be **GRANTED IN PART** and **DENIED IN PART** with leave to amend.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff commenced this action on November 12, 2014, by filing a Complaint and motion for leave to proceed *in forma pauperis*.  (ECF Nos. 1, 2.)  On December 31, 2014, Plaintiff filed a First Amended Complaint ("FAC").  (ECF No. 3.)  On February 9, 2015, the Honorable Gonzalo P. Curiel granted Plaintiff's motion for leave to proceed *in forma pauperis* and, following an initial screening of the FAC pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), directed U.S. Marshal service of the FAC on Plaintiff's behalf.  (ECF No. 4.)

Defendants filed a Motion to Dismiss Plaintiff's FAC on May 4, 2015, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 10.)  Defendants contended the FAC should be dismissed because: (1) Plaintiff failed to state a claim in any of his three counts; and (2) the face of the FAC demonstrated that Plaintiff failed to exhaust administrative remedies as to Count 3.  (*Id.* at 2:1-4.)  Plaintiff filed an opposition to Defendants' Motion to Dismiss on June 5, 2014.  (ECF No. 13.)  Defendants filed a reply on June 9, 2015.  (ECF No. 14.)  On December 15, 2015, the Honorable David H. Bartick issued a Report and Recommendation recommending that Judge Curiel grant Defendants' Motion to Dismiss

---

[2]    A corrected version of the SAC, which was utilized by all parties and the Court in addressing this motion, is on the docket at ECF No. 18-1.  All references to the SAC in this Order, however, refer to ECF No. 18, unless otherwise noted.

[3]    Plaintiff sues all Defendants in their individual and official capacities.  (SAC at 2.)

the FAC, with leave to amend.  (ECF No. 16.)

Judge Curiel adopted the Report and Recommendation on March 29, 2016, and granted in part and denied in part Defendants' Motion to Dismiss.  (ECF No. 17.)  Plaintiff was given leave to file an amended complaint on or before May 1, 2016.  (*Id.* at 22.)  On April 15, 2016, Plaintiff filed his SAC.  (ECF No. 18.)  Defendants filed a Motion to Dismiss Portions of Plaintiff's SAC on April 28, 2016.  (ECF No. 22.)  Defendants did not move to dismiss Plaintiff's retaliation claims in Counts 1 and 2 against Defendant Sterling.  (ECF No. 22-1 ("Mot.") at p. 22.)  Plaintiff thereafter filed an opposition and Defendants filed a reply.  (ECF Nos. 23, 26.)

On May 23, 2016, Plaintiff filed a Motion for Entry of Default, arguing he was entitled to entry of default on Counts 1 and 2 because Defendants only filed a partial motion to dismiss.  (ECF No. 25.)  The Court denied the motion on August 16, 2016.  (ECF No. 28.)

**B.**   **Plaintiff's SAC**

Plaintiff is currently incarcerated at CSP-Corcoran.  (SAC at 1.)  The allegations in Plaintiff's SAC stem from incidents occurring in April and October 2014 while Plaintiff was incarcerated at R.J. Donovan Correctional Facility ("RJD") in San Diego, California.  (*Id.*)  Plaintiff alleges three separate counts:

**1.**   <u>**Count 1**</u>

Count 1 of the SAC asserts claims for retaliation, and violations of Plaintiff's right to free speech and right to redress grievances.  (*Id.* at 3.)

Plaintiff alleges that on April 2, 2014, Defendant Sterling, a library technical assistant, denied his attempt to obtain Priority Legal User ("PLU") status, even though Plaintiff had a court order from the Central District of California allegedly demonstrating extraordinary circumstances warranting such status.[4]  (*Id.* at 2, 3, 4.)  Defendant Sterling

---

[4]   Plaintiff attaches to the SAC a November 21, 2013 order from the Central District of California, which advised "the Warden and other custodial officials" that

allegedly told Plaintiff that "PLU is generally for lockdowns and modified program," which Plaintiff alleges is contrary to California Code of Regulations §§ 3122(a), (b)(1) (b)(6).[5]  (*Id.* at 6.)

Defendant Sterling's response prompted Plaintiff to file a California Department of Corrections and Rehabilitation ("CDCR") Form 22, which is an informal request for response.  (*Id.* at 3.)  Plaintiff attaches his CDCR Form 22, dated April 2, 2014, to the SAC.  (*Id.* at 6.)  In the request, Plaintiff states that he was "erroneously denied PLU status" by

---

Plaintiff had two pending civil rights actions and one habeas corpus petition.  (SAC at 4.)  The order further states: "Plaintiff needs access to, among other things, all legal documents, copying services, writing materials, the prison law library, as permitted by prison rules, to properly and adequately represent himself in the pending proceedings."  (*Id.*)

[5]     California Code of Regulations § 3122(b) of Title 15 provides, in part:

Inmates who have established court deadlines may apply for Priority Legal User (PLU) status to the prison law libraries.  Inmates who are granted PLU status based on their application shall receive higher priority to prison law library resources than other inmates.  All inmates who are not on PLU status are on General Legal User (GLU) status.

(1) An established court deadline may be either a court imposed deadline for an active case or a statutory deadline.  Inmates who apply for PLU status based on a court imposed deadline must show documentation from the court to verify that deadline.  Inmates who apply for PLU status based on a statutory deadline must identify the legal rule that compels the deadline.

. . .

(6) An inmate may receive PLU status within 30 calendar days of his or her established court deadline unless the inmate can demonstrate need for a longer period of PLU status based on extraordinary circumstances beyond the inmate's control.

Cal. Code Regs. tit. 15, §§ 3122(b)(1), (b)(6).

Defendant Sterling "under the unreasonable pretense that PLU status is generally for lockdown's and modified program." (*Id.*)

Plaintiff alleges that he tried to give Defendant Sterling the CDCR Form 22, but was refused. (*Id.* at 3.) Therefore, Plaintiff forwarded the request to Defendant Sterling's direct supervisor, Defendant Balakian, who Plaintiff believes instructed Defendant Sterling to respond. (*Id.*) Plaintiff alleges that Defendant Sterling "failed to controvert Plaintiff's verbatim account of what [Defendant] Sterling stated about the PLU process, and, instead, raised a moot issue concerning Plaintiff giving [Defendant] Sterling's inmate clerk the informal request to give her, even though these same clerks handle and make copies of inmate litigants sensitive legal documents." (*Id.*) Plaintiff alleges he re-submitted the informal response for supervisor review, but received no response from Defendant Balakian. (*Id.*)[6]

Plaintiff also alleges Defendant Sterling retaliated against him on April 2, 2014, for exercising his right to redress grievances and right to law library access, by instructing a trainee of less than a month, L. Acosta, to issue a CDCR 128A Chrono Report, alleging misconduct. (*Id.*) The CDCR 128A Chrono Report, which is attached the SAC, states:

> On Wednesday, April 02, 2014, at approximately 1315 hours, while performing my duties as Facility "D" LTA (A); I observed Inmate INGRAM, AE-6335 (D19-220L) entering the law library. During the time that INGRAM was inside the library, I entered the Staff restroom. Through the Staff restroom door, I could hear an escalating conversation between INGRAM and

---

[6]   Defendant Sterling ultimately responded to Plaintiff's April 2, 2014 CDCR Form 22 on April 15, 2015, stating that clerks are not allowed to hand a CDCR Form 22 from an inmate to staff, in accordance with California Code of Regulations § 3086. (SAC at 6.) Rather, the forms must be given to personnel directly or mailed to staff from an inmate. (*Id.*)

California Code of Regulations § 3086 of Title 15 provides, in pertinent part: "When seeking response to a written request for an interview, item, or service, the inmate . . . shall complete the Request for Interview, Item or Service form to describe his or her request. The inmate shall deliver or mail via institutional mail the completed form to any staff member who is able to respond to the issue." Cal. Code Regs. tit. 15, § 3086(e).

> my colleague Ms. K. Sterling who is the Facility "D" Librarian.   The conversation was at such a loud tone, it was very discernable through the Staff bathroom door.   I then came out of the restroom and advised INGRAM that he needed to step away from the out-of-bounds area that was clearly posted. INGRAM did not comply with my direct order the first time.   I then ordered INGRAM a second time to leave the library to which he finally complied with my direct order and exited the library.

(*Id*. at 8.)  Plaintiff alleges the retaliation did not reasonably advance any penological goal and that it was reasonably inferrable the trainee issued the report at the instruction of Defendant Sterling.  (*Id*. at 3.)

On April 5, 2014, Plaintiff attempted to renew his PLU status by submitting a PLU Request and Declaration.  (*Id*. at p. 10, 12; ECF No. 18-1 at 4.)  Defendant Sterling again refused to grant status.  (*Id.* at 12; ECF No. 18-1 at 4.)  Plaintiff alleges Defendant Sterling "sought to make an incident alleging that Plaintiff was out-of-bounds," and contacted custody.  (ECF No. 18-1 at 4.)  When custody arrived, Plaintiff explained the situation and handed a prepared CDCR Form 22 to one of the correctional officers, who hand-delivered it to Defendant Sterling.  (*Id*.)

In the CDCR Form 22, Plaintiff states that when he attempted to obtain PLU status, "[Defendant] Sterling became belligerent, refused to grant status, nor adhere to established rules or exception, and falsely accused [him] of threats, manipulation, etc., [and] when [he] tried to defend, explain, then [n]oticed that [he] would appeal to her supervisors."  (*Id*. at 12.)  Defendant Sterling responded to the CDCR Form 22 on the same day, stating that what Plaintiff presented for PLU status is not in accordance with Title 15, California Code of Regulations §§ 3122(b)(1) and (b)(6).  (*Id*.)  Plaintiff requested supervisor review on April 6, 2014, but Plaintiff alleges Defendant Balakian never responded.  (*Id*. at 12; ECF No. 18-1 at 4.)

In the SAC, Plaintiff alleges Defendant Sterling retaliated against Plaintiff on April 5, 2014, for seeking to redress/appeal another reasonable right to access by falsely charging him with a serious CDCR 115 Rule Violation Report ("RVR") for "Disobeying a Direct Order."  (*Id*. at 3.)  The RVR was signed by Defendant Sterling and dated April 11, 2014.

(*Id*. at 14.)  In the RVR, Defendant Sterling states:

> On Saturday, April 05, 2014, at approximately 1030 hours, while performing my duties as Facility "D" rotation yard schedule; I observed Inmate INGRAM, AE-6335 (D19-220L) entering the Facility "D" Law Library out of his tier rotation yard schedule.  I had already verbally counseled INGRAM on 04/02/14 and 04/03/14 regarding his unauthorized entry into the law library out of his tier rotation.  I then gave INGRAM a direct order to exit the law library, at which time, he refused to comply with my order by becoming belligerent and argumentative with me for several minutes.  I informed INGRAM that I would activate my Personal Alarm Device (PAD) if he did not leave.  I then contacted the Facility "D" Program Office for further assistance, at which time, INGRAM voluntarily left without further incident.  This concludes my report.  Inmate INGRAM is aware of this report.

(*Id*.)

On April 17, 2014, Plaintiff was found not guilty of the RVR and the charges were dismissed.  (*Id*. at 15.)  The dismissal states: "[A] review of the yard schedule indicated that the top tier was out for a.m. yard, and [Plaintiff] is currently assigned to the top tier." (*Id*.)  Therefore, the hearing officer dismissed the charges "in good cause." (*Id*.)  The RVR was removed from Plaintiff's Central File.  (*Id*. at 17.)

### 2.  Count 2

Count 2 of the SAC asserts claims for retaliation, and violations of Plaintiff's right to free speech and right to redress grievances.  (*Id*. at 18.)

Plaintiff alleges that, following adjudication of the prior RVR in Plaintiff's favor, he was instructed by custodial officials not to enter the law library on "off-tier" rotation, "without custody supervision and approval," and to "ask [Defendant] Sterling for permission to enter." (*Id*.)  On April 26, 2014, Plaintiff contacted Officer Seagram and explained his intention to make copies at the law library and effectuate service of process. (*Id*.)  Officer Seagram approved the request, but warned Plaintiff that if Defendant Sterling said "No," that Plaintiff should leave the law library without further incident. (*Id*.)  Plaintiff alleges he followed instructions and made the request to Defendant Sterling, which was denied.  (*Id*.)  He therefore left, "pending afternoon library session on Plaintiff's tier

7

rotation." (*Id*.)

That afternoon, Plaintiff went to the law library and processed two separate sets of items to copy, including exhibits from the dismissed RVR (for attachment to a CDCR 602 Appeal) and a settlement conference request motion. (*Id*. at 18, 21-22.) Plaintiff alleges that Defendant Sterling, for the first time, handled his copy job herself, and in addition to making Plaintiff's copies, made copies for herself. (*Id*. at 18.) Plaintiff contends that although he watched her make copies for herself, she lied about making the copies and attempted to conceal the "illegally copied documents." (*Id*.) Plaintiff alleges that Defendant Sterling's inmate clerks usually make copies. (Id.)

After making copies for both herself and Plaintiff, Defendant Sterling notified Plaintiff that he would be receiving another RVR for "Disobeying a Direct Order," alleging that he was "out-of-bounds" again. (*Id*. at 18-19, 28.) The RVR, issued by Defendant Sterling on May 6, 2014, alleges Plaintiff "refused to sign the sign-in/sign-out sheet, entered a restricted area, and refused a direct order." (*Id*. at 28.) Plaintiff contends that Defendant Sterling issued the RVR in retaliation for Plaintiff attempting to redress/appeal a reasonable right to library access. (*Id*. at 18.) Plaintiff further alleges that he was engaged in the protected conduct of filing a grievance at the time Defendant Sterling gave notice, and that Defendant Sterling's copying of his documents for herself, was an attempt to "chill" his grievance process. (*Id*. at 19.)

Plaintiff alleges that Defendant Sterling further retaliated against him on April 26, 2014, by issuing a CDCR 128A Chrono Report for documenting in the copy log book that she made copies of his documents for herself. (*Id*.) In the CDCR 128A Chrono Report, Defendant Sterling contends that Plaintiff "intentionally introduced false information on [a] document/record maintained by the CDCR's Education/Library program" when he wrote "Ms. Sterling took copies (4) herself → of 602 exhibits" on the "Copy List" log. (*Id*. at 26.) Defendant Sterling further states that Plaintiff was in "direct violation of CCR Section § 3021" by intentionally entering and introducing false information upon a record/document maintained by CDCR's Education/Library Program. (*Id*.) In the SAC,

Plaintiff alleges his conduct was protected because he was documenting Defendant Sterling's conduct for appeal purposes.  (*Id*. at 19.)

On April 26, 2014, after Plaintiff finished at the law library, he submitted another CDCR Form 22, which was signed off by and delivered to Defendant Sterling by Sergeant Bettinger.  (*Id*. at 19, 24.)  He received no response.  (*Id*. at 19.)

On May 10, 2014, Plaintiff was found not guilty of the May 6, 2014 RVR and the charges were dismissed.  (*Id.* at 31.)  The dismissal order states that "the Reporting Employee failed to identify the direct order given, and the direct order that [Plaintiff] failed to follow."  (*Id*.)  The RVR was removed from Plaintiff's Central File.  (*Id*. at 31, 33.)

Plaintiff alleges that he submitted CDCR 602 Appeals on these issues on both April 28, 2014,[7] and May 13, 2014.[8]  (*Id*. at 19.)  Plaintiff contends his factual allegations of "Employee Misconduct – Course of Conduct" were misconstrued as a "Disciplinary" matter, and as a result, the merits of his claims were not reached.  (*Id*.)  Plaintiff alleges the administrative appeals process was ineffective in addressing his retaliation claims.  (*Id*.)

### 3.    **Count 3**

Count 3 of the SAC asserts claims for retaliation, and violations of Plaintiff's right to free speech and right to redress grievances.  (*Id*. at 44-46.)

Plaintiff alleges that on October 17, 2014, Defendant Sterling retaliated against Plaintiff by falsely charging him with an RVR for "Behavior Which Might Lead to Violence."  (*Id.* at 44, 53.)  As a result of the RVR, Plaintiff was placed in Administrative Segregation ("Ad-Seg"), his privileges were reduced, his job and pay were terminated, and he was transferred from RJD to CSP-Corcoran.  (*Id.* at 44-45.)  Plaintiff alleges this incident

---

[7]    The April 28, 2014 CDCR 602 Appeal concerns the incidents on April 2, 2014 and April 5, 2014.  (SAC at 34-38.)

[8]    The May 13, 2014 CDCR 602 Appeal concerns Defendant Sterling's ongoing conduct and references incidents on April 2, 2014, April 5, 2014, April 16, 2014, and April 26, 2014.  (*Id.* at 39-43.)  Plaintiff sought to have it classified as a Staff Complaint.  (*Id.* at 40.)

was part of an ongoing course of conduct of retaliation by Defendant Sterling and that if CDCR had properly characterized his earlier CDCR 602 Appeal, this incident could have been prevented.  (*Id.*)

On October 17, 2014, Plaintiff sought to make copies of a motion for one of his three pending Central District of California proceedings and to obtain a certified trust account statement to file an *in forma pauperis* application for a new case in the Southern District of California.  (*Id.* at 44, 48-51.)  Plaintiff alleges Defendant Sterling refused to process the application because she observed that he was attempting to initiate a case in the Southern District of California.   (*Id.* at 44.)   He further alleges that the following conversation occurred:

> Defendant Sterling: "Your application is incomplete."
>
> Plaintiff: "How is that? I've filled out relevant sections."
>
> Defendant Sterling: "You have to state your defendants."
>
> Plaintiff: "No, I don't! I've stated a Biven's Claim.  You can't tell me how to litigate my case."
>
> Defendant Sterling: "I'm not processing your application.  I'm tired of going through this stuff with you."
>
> Plaintiff: "Well, you haven't seen anything yet."

(*Id.* at 44-45.)

Plaintiff alleges that no threats were implied or stated, and that Defendant Sterling did not activate her PAD at that time, per institution policy and procedure.  (*Id.* at 45.)  Rather, Defendant Sterling waited approximately five hours to file her allegedly false charges in an RVR stating that she was "verbally threatened" and did not feel safe around Plaintiff.  (*Id.* at 45, 53.)  Plaintiff alleges that Defendant Sterling's actions chilled his access to the courts.  (*Id.* at 45.)  As a result of the RVR, Plaintiff was placed in Ad-Seg on October 17, 2014.  (*Id.* at 64.)

On October 21, 2014, Plaintiff appeared before the Institution Classification Committee ("ICC") for an Ad-Seg review.  (*Id.* at 45, 63-66.)  Plaintiff alleges Defendant Seibel was in attendance and failed to respond, which resulted in Plaintiff being released

to a different facility pending transfer, with reduced privileges.  (*Id.* at 45, 65.)  He further alleges a subsequent "emergency appeal on this matter went unanswered."  (*Id*. at 45, 67.)

On November 6, 2014, Plaintiff was found not guilty of the October 2014 RVR and the charges were dismissed.  (*Id*. at 45, 53-59.)  The RVR was removed from his Central File.  (*Id*. at 58.)  Plaintiff contends that "[c]ustody is well aware of an on-going issue between [Defendant] Sterling and inmate litigants."  (*Id*. at 45.)  Plaintiff lists cases and attaches letters and grievances involving Defendant Sterling, alleging that her supervisors, including Defendant Paramo, were aware of her conduct towards inmates and should have prevented her constitutional violations.  (*Id*. at 44-45.)

On July 9, 2015, Plaintiff was transferred to CSP-Corcoran, allegedly as a direct result of the retaliatory conduct of Defendant Sterling.  (*Id.* at 45.)[9]

## II.    DISCUSSION

### A.    Legal Standards

#### 1.    Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss."  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  However, courts may consider exhibits that are attached to the complaint.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss. (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978))).  However,

---

[9]    The ICC review states that Plaintiff's transfer "is considered adverse because his behavior with Library Sterling is the cause of the transfer."  (SAC at 65.)

exhibits that contradict the allegations of a complaint may fatally undermine the complaint's allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims." (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."))).

A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Citation omitted.] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

"All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed. v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988 (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''"  *Id.* (quoting *Twombly*, 550 U.S. at 570 (when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")).

In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## 2.   Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

"In a civil rights case where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt." *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).

Nevertheless, a court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing

*Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)).  Thus, before a *pro se* civil rights complaint may be dismissed, the Court must provide the plaintiff with a statement of the complaint's deficiencies.  *Karim–Panahi*, 839 F.2d at 623–24.  But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate.  *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

### B.    Analysis

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  It imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

Here, there appears to be no dispute that Defendants acted under color of state law in their official capacities as employees of RJD.  "[G]enerally, a public employee acts under color of state law while acting in his [or her] official capacity or while exercising his [or her] responsibilities pursuant to state law."  *West v. Atkins*, 487 U.S. 42, 50 (1988).  Thus, Plaintiff's claims turn on the second inquiry, namely, whether Defendants deprived Plaintiff "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.

Defendants contend that Plaintiff's SAC fails to state a claim under Section 1983 for violation of Plaintiff's right to free speech and right to redress grievances, and for deliberate indifference or supervisory liability.  Defendants further contend that Count 3 must be dismissed without prejudice and without leave to amend, because Plaintiff failed to exhaust his administrative remedies prior to filing suit.

### 1.    <u>Exhaustion of Remedies as to Count 3</u>

Defendants contend that Count 3 should be dismissed because Plaintiff failed to

exhaust administrative remedies as to the claims asserted therein before filing suit.

a.   *Applicable Law*

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is "mandatory." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002). Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

"In a typical PLRA case, a defendant will have to present probative evidence [in a Rule 56 motion for summary judgment] . . .  that the prisoner has failed to exhaust administrative remedies under § 1997e(a)." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc).  However, "in . . . rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.* (citing *Jones*, 549 U.S. at 215-16; *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) ("[A]ffirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact."); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) ("[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.")).

b.   *Analysis*

Defendants contend that Plaintiff admits on the face of the SAC that he failed to exhaust administrative remedies as to Count 3 before commencing this action.  The allegations in Count 3 stem from the incident between Plaintiff and Defendant Sterling on October 17, 2014, the subsequent RVR, dated October 17, 2014, and the ICC review, which occurred on October 23, 2014. (SAC at 44-45.)  After the ICC review, Plaintiff alleges that

he sought an "emergency appeal" on the ICC action and RVR false charges, but the appeal went unanswered.  (*Id.* at 45, 67.)

Defendants argue that pursuant to CDCR's inmate appeal system, which is codified in Title 15 of the California Code of Regulations, Plaintiff could not possibly have exhausted his appeal prior to the filing of his initial complaint in this action on November 12, 2014.  (Mot. at pp. 10-12.)  Therefore, Defendants ask the Court to dismiss Count 3 without prejudice, but without leave to amend.  (*Id.* at p. 1.)  Plaintiff argues in response that his allegation that there was an "emergency appeal" that went unanswered is sufficient to demonstrate Count 3 was exhausted.  (ECF No. 23 at p. 8.)  Plaintiff further argues there was an unavailability of remedy because of the failure to respond.  (*Id.*)

The Supreme Court has "held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' [citation] -- rules that are defined not by the PLRA, but by the prison grievance process itself."  *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  The administrative appeal system for inmates in the California prison system is described in Title 15 of the California Code of Regulations:  "Any inmate . . . under the [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  For appeals submitted after January 28, 2011, inmates must commence the appeals process by submitting a CDCR Form 602 to the facility's appeals coordinator describing "the specific issue under appeal and the relief requested."  *Id.* at § 3084.2(a), (c).  Among other requirements, the appeal must be "limited to one issue or related set of issues" and "list all staff member(s) involved and shall describe their involvement in the issue."  *Id.* at § 3084.2(a)(1), (3).

If a prisoner is not satisfied with the first level response, he may submit a formal appeal for a second level review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden . . . or the equivalent."  *Id.* at § 3084.7(d)(2).

If the prisoner is not satisfied with the second level review, he may appeal to the third level of review by the Chief of the Office of Appeals in Sacramento. *Id*. at § 3084.7(c), (d)(3). "The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and . . . exhausts administrative remedies." *Id.* at § 3084.7(d)(3).

CDCR has exceptions to the regular appeals process for certain types of appeals, including staff complaints, disciplinary appeals, and emergency appeals. *See id.* at § 3084.9. An inmate alleging staff misconduct by a departmental employee, as defined by § 3291(b), shall attach a § 3391(d) "Rights and Responsibility Statement" to the appeal and forward the appeal to the appeals coordinator. *Id.* at §§ 3084.9(i)(1). "All appeals alleging staff misconduct will be presented by the appeals coordinator to the hiring authority or designee within five working days." *Id.* at § 3084.9(d)(i)(3). "If the hiring authority makes a determination that the complaint shall not be accepted as a staff complaint, it shall be processed as a routine appeal." *Id.* at § 3084.9(i)(1). With respect to disciplinary appeals, "[a] disciplinary action cannot be appealed until the hearing process is completed, including any re-hearing." *Id.* at § 3084.9(g)(1). In cases of emergency, such as the threat of death or injury or serious and imminent threat to health or safety, appeals shall be processed as emergency appeals with expedited processing. *Id.* at § 3084.9(a).

Except for allegations of sexual violence or staff sexual misconduct, an inmate must submit his first level appeal within 30 calendar days of: "(1) [t]he occurrence of the event or decision being appealed, or; (2) [u]pon first having knowledge of the action or decision being appealed, or; (3) [u]pon receiving an unsatisfactory departmental response to an appeal filed." *Id.* at §§ 3084.8(b)(1)-(3). Generally, all appeals must be responded to and returned to the inmate by staff at the first level within thirty working days from the date of receipt by the appeals coordinator. *Id*. at § 3084.8(c)(1). An appeal accepted as an emergency appeal, however, is processed within a different time frame. *Id.* at §§ 3084.8(c), (f). "If emergency processing is warranted, the first level shall be waived and the second level review shall be completed within five working days." *Id*. at § 3084.9.

Under the burden-shifting analysis recognized in *Albino*, Defendants bear the initial burden of establishing "there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 767 (9th Cir. 1996)). The failure to respond to a grievance makes remedies "unavailable" and therefore excuses the failure to exhaust. *See Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (citing *Dole v. Chandler*, 438 F.3d 804, 809, 811 (7th Cir. 2006)).

Plaintiff alleges that he filed an emergency appeal after his ICC review, which took place on October 23, 2014. (SAC at 45, 67.) Plaintiff does not allege the date of his appeal. However, if he filed the emergency appeal, by which emergency processing was deemed warranted, on October 23, 2014, he should have received a response within five working days. Plaintiff alleges he did not receive a response. As he filed his initial complaint in this matter on November 12, 2014, more than five working days after October 23, 2014, Plaintiff has plausibly alleged a failure to respond, which excuses his failure to exhaust.

Defendants argue the face of the SAC shows that Plaintiff has not sufficiently alleged he was entitled to an emergency appeal, as he "would not have been subject to serious and irreparable harm by going through the regular grievance procedure timelines for his complaint . . . since Plaintiff admits that he would only suffer 'reduced privileges.'" (Mot. at p. 12.) Defendants further argue that inmates can only grieve a transfer after a classification staff representative has actually issued a transfer endorsement, and Plaintiff was not transferred until July 9, 2015. (*Id.* (citing Cal. Code Regs. tit. 15, § 3084.9(h)).) Therefore, Defendants contend Plaintiff could not have grieved his transfer before the filing of his complaint in this matter. (*Id.*)

As stated in *Albino*, "a plaintiff is not required to say anything about exhaustion in his complaint." 747 F.3d at 1169. Thus, Plaintiff was not required to attach his emergency appeal to the SAC, which he has not, or allege the foundation for his emergency appeal, which he has not. Although Defendants argue the face of the SAC is clear, the Court disagrees. The Court simply does not have enough information about the emergency

appeal, the response or lack thereof, or the basis for the alleged emergency, to find that Plaintiff failed to exhaust his claims in Count 3 before filing suit.

Accordingly, the Court finds that it cannot be determined at this stage based on a review of the SAC that Plaintiff failed to exhaust administrative remedies as to the claims asserted in Count 3.

### 2.   Retaliation (Count 3)

In the SAC, Plaintiff alleges claims for retaliation against Defendants in all counts. Defendants move to dismiss Plaintiff's retaliation claim in Count 3.  (Mot. at pp. 12-13.)

#### a.   *Applicable Law*

The Constitution provides protection against "[d]eliberate retaliation" by prison officials against an inmate's exercise of his right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (intentional obstruction of the right to seek redress "is precisely the sort of oppression that . . . section 1983 [is] intended to remedy"); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986)).  Indeed, "[o]f fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances,' *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to 'pursue civil rights litigation in the courts.'   *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *see also Soranno's Gasco*, 874 F.2d at 1314 ("The right of access to the courts is subsumed under the first amendment right to petition the government for redress of grievances." (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Harrison*, 780 F.2d at 1427-28). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.   And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes*, 408 F.3d at 567 (citing *Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995) ("[T]he prohibition against retaliatory punishment

is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes.  That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits.")).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Id.* at 567-68 (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam) ("A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline.")).

Because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation.  *Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989).  However, "[r]etaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, Plaintiff must allege sufficient facts to plausibly suggest a nexus between the two." *Rojo v. Paramo*, No. 13cv2237, 2014 U.S. Dist. LEXIS 80156, at *12-13 (S.D. Cal. June 10, 2014) (citing *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, *i.e.*, "after this, therefore because of this")).  "Thus, while 'the timing and nature' of an allegedly adverse action can 'properly be considered' as circumstantial evidence of retaliatory intent, the official alleged to have retaliated must also be alleged to have been *aware* of the plaintiff's protected conduct." *Id.* at *13 (quoting *Soranno's Gasco*, 874 F.2d at 1315-16; *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent."); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (noting that "mere speculation that

defendants acted out of retaliation is not sufficient" and affirming summary judgment where the record contained "nothing . . . to indicate [defendant] even knew about [an] earlier [law]suit.")).   Moreover, a plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act.  *Soranno's Gasco*, 874 F.2d at 1314.

<b>b.</b>   *Analysis*

Defendants contend that Plaintiff has failed to state a retaliation claim in Count 3 in connection with the issuance of the RVR related to the October 17, 2014 incident.  (Mot. at pp. 12-13.)  Defendants do not dispute that Plaintiff sufficiently alleges that Defendant Sterling took adverse action against him by issuing a false RVR, which resulted in him being placed in Ad-Seg, the loss of his job and pay, and an adverse transfer to another prison, because he was trying to redress his grievances in federal court, and that this action chilled the exercise of his First Amendment rights.  Rather, Defendants argue that Plaintiff has not sufficiently alleged "the absence of legitimate correctional goals for the allegedly retaliatory action of reporting [Plaintiff's] comment for investigation."  (*Id.* at p. 13.)  In particular, Defendants contend that "[r]eporting interactions with inmates that might be of a threatening nature for investigation serves the correctional goals of ensuring staff safety, and of reminding inmates that they need to be respectful when they interact with staff and need to think about how their comments might be interpreted."  (*Id.*)

After review of the SAC, the Court finds Plaintiff has sufficiently alleged the claimed adverse action did not reasonably advance a legitimate correctional goal.  Plaintiff alleges an ongoing course of conduct of retaliation by Defendant Sterling.  (SAC at 44-45.) He further alleges that his interactions with Defendant Sterling on October 17, 2014 occurred as he was attempting to initiate a Section 1983 civil rights suit, after filing multiple CDCR 602 Appeals naming Defendant Sterling, of which she was aware.  (*Id.* at 44.) Plaintiff also alleges that Defendant Sterling stated during their interaction that she was "tired of" Plaintiff, and did not activate her PAD after the alleged threat, as required "per institution policy and procedure."  (*Id.*)  Instead, Plaintiff alleges Defendant Sterling waited

21

nearly five hours before filing the relevant RVR.  (*Id*. at 45.)  Lastly, Plaintiff alleges "[n]o threats were implied or stated," and it was ultimately determined after a hearing that Plaintiff was not guilty, with the hearing officer believing that Plaintiff "was telling the truth and when he made the statement, he was referring to his civil case."  (*Id.* at 45, 53-59.)

Based on the foregoing, the Court finds that Plaintiff has plausibly alleged Defendant Sterling's issuance of the RVR on October 17, 2014 was purely retaliatory and did not reasonably advance a legitimate correctional goal.  *See Rizzo v. Dawson*, 778 F.2d 527, 532 & n. 4 (9th Cir. 1985) (finding that where a plaintiff makes allegations, supported by facts, that a defendant's actions were retaliatory and arbitrary and capricious, he has sufficiently alleged the retaliatory acts were not a reasonable exercise of prison authority and did not serve any legitimate correctional goal).

As such, the Court finds Plaintiff has sufficiently alleged a retaliation claim in Count 3.

### c.   *Qualified Immunity*

Defendants further argue they are entitled to qualified immunity for the retaliation claim in Count 3.  (Mot. at pp. 13-16.)  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations and citation omitted); *see also Jackson v. City of Bremerton*, 268 F.3d 646, 650-51 (9th Cir. 2001).  "Qualified immunity is an affirmative defense that must be raised by a defendant."  *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).  Therefore, dismissal under Rule 12(b)(6), "is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies."  *Id*.

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the

right was clearly established in light of the specific context of the case." *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010) (citation and internal quotation marks omitted). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Courts have discretion to address these two prongs in any sequence it sees fit. *Ashcroft v. al–Kidd*, 573 U.S. 731, 735 (2011).

As discussed above, the Court finds that Plaintiff has plausibly alleged a First Amendment retaliation claim in Count 3. Thus, the question of whether qualified immunity applies turns on whether Defendants violated a clearly established constitutional right.

Defendants argue that the proper inquiry is "whether a reasonable prison librarian could have believed that she could report comments made to her by an inmate that could be broadly interpreted as threatening even though the comments could also be interpreted in a non-threatening manner." (Mot. at p. 16.) The answer to this question, Defendants' claim, "is by no means open and shut"; thus, Defendant Sterling did not have fair warning that her actions were unconstitutional. (*Id*.)

However, a prisoner's general right against retaliatory punishment was clearly established before the events at issue in 2014. *Shepard v. Quillen*, 840 F.3d 686, 693 (9th Cir. 2016) (citing *Rhodes*, 408 F.3d 559, 569 (9th Cir. 2005)); *see also Bruce v. Ylst*, 351 F.3d 1283, 1289-90 (9th Cir. 2003). As the Court finds Plaintiff has sufficiently alleged that Defendant Sterling was purely motivated by a retaliatory animus, the Court denies Defendants' motion on the grounds of qualified immunity at this stage. *See id.* (finding that if it was determined the defendant was motivated by a "retaliatory animus," rather than relying on what he reasonably thought was a prison policy, the defendant would have been knowingly violating the law); *see also Bruce*, 351 F.3d at 1289 (prison officials may not abuse valid procedures "as a cover or a ruse to silence and punish" an inmate).

Accordingly, the Court finds Defendants have failed to establish they are entitled to qualified immunity on Count 3 at this stage.

23

### 3.    Right to Redress Grievances and Right to Free Speech

Defendants move to dismiss Plaintiff's right to redress grievances and right to free speech claims for failure to state a claim.  (Mot. at pp. 16-18.)  In the SAC, Plaintiff generally alleges Defendants retaliated against him for exercising his rights to redress grievances and free speech.  However, Plaintiff does not separate his right to redress grievances and right to free speech claims from his retaliation claims.

In the SAC, Plaintiff alleges that on April 2, 2014, Defendant Sterling retaliated against him "for exercising his right to redress/appeal a reasonable right to law library access." (SAC at 3.)  Plaintiff further alleges Defendant Sterling retaliated against him on April 5, 2014, "for seeking to redress/appeal another reasonable right to access issue." (*Id*.) Plaintiff alleges Defendant Sterling also retaliated against him on April 26, 2014 "for attempting to redress/appeal a reasonable right [to] law library access." (*Id*. at 18-19.) Lastly, Plaintiff alleges Defendant Sterling retaliated against him on October 17, 2014 when he attempted to make copies and obtain a certified trust account statement in order to pursue civil rights litigation in court. (*Id*. at 44.)

As stated above, "[o]f fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances,' and to 'pursue civil rights litigation in the courts.'" *Rhodes*, 408 F.3d at 567 (internal citations omitted).  "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices." *Id*.  "The right of access to the courts is subsumed under the [F]irst [A]mendment right to petition the government for redress of grievances." *Sorrano's Gasco, Inc*., 874 F.2d at 1314.

Defendants do not move to dismiss Plaintiff's right to redress grievances and right to free speech claims on the basis they fail as retaliation claims.  Rather, Defendants generously construe Plaintiff's SAC as alleging separate claims.  As to the free speech claim, Defendants argue "Plaintiff does not allege that he was prevented from speaking out on any issue except perhaps for Defendant Sterling reporting that Plaintiff said, 'Well, you haven't seen anything yet.'" (Mot. at p. 16.)  Defendants argue that an inmate's verbal

challenge to prison staff is not within the scope of First Amendment protection.  (*Id.*) However, the Court does not construe the SAC as alleging a separate free speech claim as to this statement.  Rather, both the SAC and Plaintiff's opposition to Defendants' Motion to Dismiss make clear that Plaintiff's free speech claim is subsumed within his First Amendment retaliation claim.  (*See* SAC at 44-45; ECF No. 23 at 22-23.)

As to Plaintiff's right to redress grievances claim, Defendants argue that any allegation that they improperly responded to Plaintiff's prison grievances fails to state a claim for violation of right to redress grievances.  (Mot. at pp. 16-17.)  Again, Defendants generously construe Plaintiff as alleging right to redress grievances claims, separate and apart from his retaliation claims.  However, to the extent Plaintiff's right to redress grievances claims are based, at least in part, on the allegations that Defendants improperly responded, or failed to respond, to his CDCR Form 22s and CDCR 602 Appeals, the Court agrees that Plaintiff has failed to state a claim.  (*See* SAC at 3, 19, 45.)

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States."  *West*, 487 U.S. at 48.  Inmates, however, "lack a separate constitutional entitlement to a specific grievance procedure."  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 40 (9th Cir. 1988)); *see also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (quoting *Azeez v. DeRobertis*, 568 F.Supp. 8 (N.D. Ill. 1982)) ("'[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon [an] inmate[].'"); *Arceo v. Salinas*, No. 11-cv-2396 KJN P, 2016 WL 1073257, at * (E.D. Cal. Mar. 18, 2016), adopted by 2016 WL 6897226 (E.D. Cal. Nov. 23, 2016) ("Even if the facility elects to provide a grievance mechanism, alleged violations of the procedures do not give rise to § 1983 claims because inmates do not have a protected liberty interest in jail or prison grievance procedures."); *Herrera v. Hall*, 08-cv-01882-LJO-SKO PC, 2010 WL 2791586, at *4 (E.D. Cal. July 14, 2010), adopted by 2010 WL 3430412 (E.D. Cal. Aug. 30, 2010) ("[A p]laintiff has no substantive right to a prison grievance system and . . . . due process claims based on the denial of or interference with a prisoner's access to a

prison grievance system are not cognizable" under Section 1983.).  Therefore, Defendants' involvement in handling Plaintiff's administrative grievances, as alleged, cannot serve as the basis for liability in a Section 1983 action.

Based on the foregoing, the Court finds Plaintiff has not stated a free speech claim separate and apart from his retaliation claims.  In addition, the Court finds Plaintiff has failed to state a claim for violation of his right to redress grievances based on Defendants' involvement in handling his administrative grievances.

### 4. <u>Supervisory Liability and Deliberate Indifference</u>

Plaintiff's allegations against Defendants Balakian, Seibel, and Paramo are based on a theory of supervisory liability, which Plaintiff calls "deliberate indifference."  (*See* SAC at 2.)

### a. *Applicable Law*

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability."  *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (quoting *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989)).  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Id.*  (quoting *Hansen*, 885 F.2d at 646); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  In order to demonstrate a sufficient causal connection, "a plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury."  *Starr*, 652 F.3d at 1207 (quoting *Redman v. Cnty. Of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991).  "'The requisite causal connection can be established . . . by setting in motion a series of acts by others,' . . . , or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'"  *Id.* at 1207-08 (internal citations omitted and alteration in original).

"A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in

the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted); *see also Starr*, 652 F.3d at 1207 ("[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates.").

b.   *Analysis*

In the SAC, Plaintiff generally alleges that Defendants Balakian, Seibel, and Paramo are liable because they were deliberately indifferent to, and acquiesced in, Defendant Sterling's alleged constitutional violations.  (SAC at 2.)  He further alleges that Defendants Balakian, Seibel, and Paramo were aware, or should have been aware, of Defendant Sterling's actions, which included previous incidents with other inmates over a period of time, but failed to provide a remedy, training, or supervision.  (*Id*. at 45-46.)

As against Defendant Balakian, Plaintiff alleges in Count 1 that after Defendant Sterling refused to accept his CDCR Form 22 on April 2, 2014, he forwarded the request to Defendant Balakian, who, Plaintiff believes, instructed Defendant Sterling to respond. (*Id*. at 3.)  Defendant Sterling responded on April 15, 2014.  (*Id*. at 6.)  Plaintiff further alleges that, after being dissatisfied with Defendant Sterling's response, he resubmitted the request for supervisor review, but received no response from Defendant Balakian.  (*Id*. at 3, 6.)  However, based on the attached CDCR Form 22, he forwarded the request for supervisor review prior to receiving a response from Defendant Sterling.  (*Id.* at 6.)  In addition, Plaintiff alleges he submitted his April 5, 2014 CDCR Form 22 to Defendant Balakian for supervisor review on April 6, 2014, but received no response.  (*Id*. at 12; ECF No. 18-1 at 4.)

Based on the foregoing, even liberally construed, Plaintiff does not plausibly allege that Defendant Balakian participated in or directed Defendant Sterling's allegedly wrongful actions.  To the contrary, Plaintiff alleges that upon being informed of the issue regarding Plaintiff's PLU status, Defendant Balakian instructed Defendant Sterling to

27

respond to Plaintiff's allegation that he was erroneously denied PLU status, which Defendant Sterling did on April 15, 2014.

Moreover, the Court finds Plaintiff has failed to plausibly allege Defendant Balakian knew or should have known of Defendant Sterling's alleged unconstitutional conduct and acquiesced thereto.   The two CDCR Form 22s Plaintiff alleges he sent to Defendant Balakian do not address his retaliation claims, or put Defendant Balakian on notice of his concerns about Defendant Sterling's alleged ongoing retaliation.   Both CDCR Form 22s only address the denial of his PLU status.   (*See id*. at 6, 12.)   The Court finds these allegations against Defendant Balakian insufficient to withstand Defendants' motion to dismiss.

As against Defendant Seibel, Plaintiff alleges in Count 2 that Defendant Seibel denied Plaintiff's CDCR 602 Appeal (Log No. RJD 14-1835), dated May 13, 2014, at the second level of review on June 14, 2014, thereby siding with Defendant Sterling.   (SAC at 19, 41-42.)   The appeal alleged "an ongoing and serious problem with [Defendant] Sterling [that] is reprisal and retaliatory in nature, for exercising the protected right of 'Access to Court.'"   (*Id*. at 39.)   Plaintiff discussed in the appeal the incidents with Defendant Sterling on April 2, 5, 16, and 26, 2014.   (*Id*. at 40.)   The appeal was reviewed and determined not to meet the requirement for assignment as a staff complaint and was referred for routine appeal processing.   (*Id*. at 41.)

Plaintiff further alleges in Count 3 that Defendant Seibel was "[i]n attendance" at the October 23, 2014 ICC review, whereupon Plaintiff was released from Ad-Seg, assigned to a different facility pending adverse transfer, and had his privileges reduced.   (*Id*. at 45, 63-66.)   Plaintiff alleges that during the ICC review, he addressed Defendant Seibel "when given permission," and explained the situation.   (*Id*. at 45.)   He informed her that "but for the unreasonable misclassification of CDCR 602 Appeal/Grievance, resulting in unfavorable outcome and no remedy, that this current incident could have been prevented, and Plaintiff's right to access to court . . . would not have been infringed upon."   (*Id.*)   He alleges that Defendant Seibel's failure to respond allowed Captain Stout to assign Plaintiff

to a different facility pending adverse transfer and reduce his privileges.  (*Id*.)

The Court finds these allegations insufficient to allege supervisory liability against Defendant Seibel.  Although Plaintiff's May 13, 2014 CDCR 602 Appeal apprised Defendant Seibel of ongoing retaliatory conduct by Defendant Sterling in April 2014, Plaintiff's only subsequent allegation of retaliation occurred in October 2014.  Thus, over five months passed between Defendant Seibel being on notice of retaliatory conduct and the next alleged incident occurring.  Although a sufficient causal connection may be established where a supervisor knowingly refuses to terminate a series of unconstitutional acts by others, the Court finds the SAC does not sufficiently allege that Defendant Seibel knew the alleged unconstitutional acts were ongoing in October 2014.  *See Starr*, 652 F.3d at 1207-08.  Accordingly, the Court finds Plaintiff has failed to state a cause of action against Defendant Seibel on a theory of supervisory liability.

As to Defendant Paramo, the Court finds Plaintiff has sufficiently alleged supervisory liability as to his First Amendment claim in Count 3.  Plaintiff attaches three letters to the SAC addressed to Defendant Paramo and others from an inmate at RJD who assists other inmates proceeding *pro se* in legal proceedings.  (SAC at 72-87.)  The first letter, dated August 28, 2013, raises the issue of Defendant Sterling's failure to maintain regular library hours, which hampers inmate access to the law library.  (*Id*. at 72-74.)  The second letter, dated August 29, 2013, raises the issue of Defendant Sterling's conduct, including her lack of professionalism, "disparaging and rude interaction with inmates," and inaccurate interpretation and lack of understanding of the law and appropriate filing procedures.  (*Id*. at 75-81.)  The second letter further states that Defendant Sterling's conduct "has reached the constitutional dimension of state actor interference with the prisoners' access to the Courts."  (*Id*. at 80.)  The third letter, dated October 4, 2013, contends that "practically any interaction" between Defendant Sterling and inmates is full of "inconsiderate disregard, abundant sarcasm, and just rife with an obvious objective to find fault and suspect in everyone."  (*Id*. at 82-87.)  The letter further states that Defendant Sterling "just won't let it go," and will "lay and wait for any opportunity to write up any

inmate for her construed of view any conduct at all . . . with her presentation of claims consistent yet whimsically changing as the evidence unfolds." (*Id*. at 84.)  The letter indicates a lawsuit will be filed naming Defendant Sterling and alleging that she has "violated the plaintiff's right to access the Court." (*Id*. at 85.)

In addition to the letters, Plaintiff attaches to his SAC a CDCR 22 Form from another inmate, dated January 3, 2015, complaining of Defendant Sterling improperly reading his court documents, refusing to show him his copies, and making a copy of a complaint in its entirety. (*Id*. at 70.)  In the body of the SAC, Plaintiff also lists orders in two cases which involved Defendant Sterling filed in the Southern District of California: *Wiseman v. Hernandez*, No. 08-cv-01272-LAB (NLS) (S.D. Cal.), and *Gray v. Hernandez*, No. 08-cv-00147-JM (WVG) (S.D. Cal.).[10]  (*Id*. at 45.)

Based on the August and October 2013 letters attached to the SAC, the Court finds the SAC contains specific factual allegations demonstrating that Defendant Paramo was put on notice of Defendant Sterling's conduct prior to the alleged violations at issue in Count 3, and failed to act, thereby plausibly suggesting he acquiesced in the alleged unconstitutional conduct. *See Starr*, 652 F.3d at 1209-11 (finding allegations of specific

---

[10]     In *Wiseman v. Hernandez*, No. 08-cv-01272-LAB (NLS) (S.D. Cal.), the plaintiff brought claims against Robert Hernandez, Warden of RJD, and Defendant Sterling, among others, alleging Defendant Sterling denied him access to the prison law library and access to the courts.  Summary judgment was denied in that case as to Defendant Sterling, and the parties ultimately settled. (*See* ECF Nos. 145, 159.)  In *Gray v. Hernandez*, No. 08-cv-00147-JM (WVG) (S.D. Cal.), the plaintiff brought claims against Robert Hernandez, Warden of RJD, and Defendant Sterling, among others, alleging Defendant Sterling denied him access to the courts.  The plaintiff withdrew all allegations as to Defendant Sterling. (*See* ECF Nos. 61, 65.)

The Court takes judicial notice of the filings in these cases. *See* Fed. R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (a court "may take judicial notice of court filings and other matters of public record"); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

incidents in letters and reports sufficient to put a supervisor on notice of a problem; and his failure to act plausibly suggests that he acquiesced in the unconstitutional conduct of his subordinates).

In conclusion, the Court finds Plaintiff's SAC does not contain sufficient factual allegations against Defendants Balakian and Seidel that would permit a claim to proceed against them based on a theory of supervisory liability. However, Plaintiff's SAC does contain sufficiently detailed factual allegations to permit Count 3 to proceed against Defendant Paramo on a theory of supervisory liability.

### 5.  <u>Conclusion</u>

Based on the foregoing, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Portions of Plaintiff's SAC be **GRANTED IN PART** and **DENIED IN PART**. As discussed above, to the extent Plaintiff intended to assert free speech and right to redress grievances claims in his SAC, separate and apart from his retaliation claims, the Court recommends Defendants' motion to dismiss be granted, with leave to amend these claims. The Court further recommends that Defendants' motion to dismiss all of Plaintiff's claims based on a theory of supervisory liability against Defendants Balakian and Seibel, as well as Counts 1 and 2 against Defendant Paramo, be granted, with leave to amend. However, the Court recommends that Defendants' motion to dismiss Count 3 as to Defendants Sterling and Paramo be denied.

## III.  CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Gonzalo P. Curiel pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3. For the reasons outlined above, IT IS HEREBY RECOMMENDED that the District Judge issue an order **GRANTING IN PART** and **DENYING IN PART** Defendants' Motion to Dismiss Portions of Plaintiff's SAC. IT IS FURTHER RECOMMENDED that Plaintiff be afforded leave to file a Third Amended Complaint to cure the pleading defects mentioned herein.

///

IT IS FURTHER ORDERED that no later than **February 17, 2017**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be filed with the Court and served on all parties no later than **March 3, 2017**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  January 31, 2017

LOUISA S PORTER
United States Magistrate Judge

14-cv-02691-GPC (DHB)